MILES HEWETT

*v.*

JOHN T. JOHNSON.

1. INSTRUCTIONS—*must be applicable to the issues.* It is not error to refuse an instruction which is foreign to any issue in the case.

2. SAME—*should not give prominence to isolated fact.* It is not proper to single out an isolated fact and give it prominence in an instruction, as such a course would have a tendency to mislead the jury.

3. FRAUD AND CIRCUMVENTION—*either, when shown in procuring the execution of a note, is a sufficient defense.* The statute does not require fraud *and* circumvention to be used in obtaining the making of a note, before the defense can be interposed, but when fraud *or* circumvention is practiced in obtaining the execution of the instrument, in either event the defense can be made availing.

APPEAL from the Circuit Court of Jefferson county; the Hon. TAZEWELL B. TANNER, Judge, presiding.

Messrs. CASEY & DWIGHT, for the appellant.

Messrs. POLLOCK & KELLER, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action of assumpsit, brought by appellant in the circuit court of Jefferson county, against appellee, on a promissory note, dated February 5, 1870, due in eight months after date, for $250, with ten per cent interest, given by John T. Johnson to Jas. B. Drake. The note was assigned to appellant without recourse, and the indorsement is without date, but the proof showed it was transferred before due.

Appellee pleaded the general issue, and that the making of the note was obtained by fraud. Issues were formed upon these pleas, a trial was had before a jury, and a verdict returned in favor of appellee, upon which the court rendered judgment. Appellant brings the case here, and insists upon a reversal of the judgment upon the following grounds:

*First*—The court erred in refusing appellant's third, fourth and seventeenth instructions.

*Second*—In giving appellee's first, third, fourth, fifth and sixth instructions.

*Third*—The court erred in overruling the motion of appellant for a new trial.

The refused instructions are as follows:

"3. If you believe, from the evidence, that Hewett, the plaintiff, purchased the note here sued on before the same was due, for a valuable consideration, and without notice of any defense against the same, and that, at the time of such purchase, said Hewett, plaintiff, was sick, and was some fifteen or twenty miles distant from defendant, then the law did not require said plaintiff, Hewett, under the circumstances, to use the diligence of going to see defendant before he, plaintiff, purchased said note."

"4. That if you believe, from the evidence, that before the execution of the note here sued on, defendant himself was and had been engaged in the vending of patent rights in this part of the country, then greater diligence would be expected and required of him than of a man who had not been so engaged."

"17. That if you believe, from the evidence, that defendant, Johnson, admitted to William Stoker that he gave the note, you have a right, if you believe said evidence, to find for plaintiff."

We are at a loss to perceive how the third instruction could, if given, have had a bearing on any legitimate issue involved in this case. The statute declares: "If any fraud or circumvention be used in obtaining the making or executing of a promissory note, such fraud or circumvention may be pleaded in bar to any action to be brought on such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention, or any assignee of such instrument."

Appellee did not, by his pleas or proof, raise the question that appellant had notice, when he purchased the note, of any fact calculated to cast suspicion upon it. He relied solely upon the defense given by the statute, which, when established, would defeat the note in the hands of an innocent holder as well as if it was held by the original payee.

The instruction being foreign to any issue involved in the case, the court did not err in refusing to give it to the jury.

As to the fourth refused instruction, we are aware of no rule of law that would require a person engaged in one branch of business to use more diligence than one having some other occupation or calling. A rule of that character would neither be just nor reasonable.

The seventeenth instruction was properly refused. It was the duty of the jury, in making their verdict, to consider all the evidence together, and from the evidence, as a whole, determine who was the meritorious party. This instruction singled out an isolated fact and brought it prominently before the jury, which would have a tendency to mislead; and it is always proper for the court to protect a jury from an unfair instruction of this character.

In regard to the second point relied upon by appellant, we have carefully considered the instructions to which exceptions have been taken, and we are unable to agree with the positions

assumed by the counsel for appellant. The instructions are based upon the evidence, and declare the law correctly.

The statute does not require fraud *and* circumvention to be used in obtaining the making of a note, before the defense can be interposed, but where fraud *or* circumvention is practiced in obtaining the execution of the instrument, in either event the defense can be made availing.

We now come to the last point relied upon by appellant: that the verdict is not sustained by the evidence.

Appellee testified, that about the 4th of February, 1870, Rea, the agent of Drake, came to his residence and desired to stay all night. During the evening he informed appellee he was agent for Drake's patent hay-fork and knife, and wished to get appellee to canvass part of Jefferson county; that Rea was a fine looking man, seemed to be devout, and took part in the family worship. Appellee declined to make any arrangement. The next morning Rea showed the working of the knife, and again urged appellee to canvass for him. Appellee told Rea he was low in finances, and could not incur any liability. Rea told appellee he could canvass until fall, and then, if he desired, buy the territory. He said, if appellee could make anything, all right; if not, he would be around in six or eight months and cancel the papers, and divide the profits, if any. Appellee finally agreed to canvass the north half of Jefferson county for eight months. Nothing was said about a note. Rea then filled up the blanks in a printed paper, and requested appellee to sign it. Said it was to show appellee's authority to act. He also said, it was necessary to have a duplicate for Drake, the patentee, and filled up another. Appellee read them over carefully, found they were contracts, and alike. He laid them on the table, and he and Rea signed them. Rea gave appellee one and kept the other. Appellee testified that he signed only the two papers. A note was not mentioned, and no note was to be given. That he did not knowingly sign a note. Never signed any such instrument as the one sued on. The two papers signed were larger than the note sued upon. Did not knowingly sign a note.

The deposition of Rea was taken by appellant, and he testified that Johnson executed the note in his presence.

Evidence was introduced that tended to corroborate appellee as well as Rea.

From the whole evidence in the case, we think it is apparent that appellee did not agree to give a note, and did not knowingly execute a promissory note. The only two papers that he signed, were by him examined carefully before they were executed. In what manner appellee's signature was obtained to the note, it is somewhat difficult, from the evidence, to determine.

Appellee testifies, when the two papers were ready for his signature, and he was about to sign them, Rea laid them upon the table and "shuffled them around." By this device it is not improbable that the note was substituted for one of the contracts which had been previously examined by appellee, and his signature to it thus fraudulently obtained.

But be that as it may, the question was fairly submitted to the jury whether the making of the note was obtained by fraud, and we can not disturb the finding where the evidence is conflicting, as it is shown to be by this record, unless the verdict was clearly in conflict with the weight of the testimony, and we can not say such is this case; on the contrary, we are satisfied the weight of evidence preponderates in favor of appellee.

The judgment will, therefore, be affirmed.

*Judgment affirmed.*