CASE 46—PETITION EQUITY—JUNE 17.

# Lyons v. Hodgen & Miller.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. GAMBLING IN FUTURES—RECOVERY OF MONEY LOST.—Section 1 of article 1 of chapter 47 of the General Statutes, which provides that "every contract, conveyance, transfer, or assurance for the consideration, in whole or in part, of money, property or other thing won, lost or bet at any game, sport, pastime or wager, shall be void," embraces gambling in futures; and section 2 of the same article entitles the loser to recover the money of the winner. The process by which the money is won and lost is a "wager" within the meaning of the statute, which was designed to embrace every species of wagering, whether practiced at the time the statute was enacted or since devised.

2. SAME.—When there is lost at a wager as much as five dollars at one time, the right of the loser to recover it from the winner exists, and he may sue therefor, or for the aggregate amount so lost during a given period, without regard to when the bet or wager was made, or how long it was pending and undetermined, the right of action being given to any person who shall lose to another "at one time, or within twenty-four hours," five dollars.

BROWN, HUMPHREY & DAVIE AND D. M. RODMAN FOR APPELLANT.

1. The appellees were keepers of a "bucket-shop," in which wagering was done on the future rise or fall of prices in grain, &c. This was a

Lyons v. Hodgen & Miller.

"wager" in the meaning of the statute. (Sawyer, Wallace & Co..
v. Taggart, 14 Bush, 751; Smith v. Western Union, 84 Ky., 684;
Beadles, Wood & Co. v. McElrath, 85 Ky., 230; Irwin v. Milliar, 110·
U. S., 508; Commonwealth v. Helm, 9 Ky. Law Rep., 532; Bryant
v. Western Union, 17 Federal Reporter, 825.)

2. The fact that this statute was enacted in 1852, before "bucket-shops"
   had become an established method of gambling, does not prevent the
   statute from applying. It was to apply to all gambling by "any
   wager" done thereafter.

3. The provision of the statute authorizing a recovery wherever the party
   loses to another more than five dollars "at one time," applies to·
   bucket-shop wagers and losses. (General Statutes, chapter 47, article-
   1, section 2.)

ROZEL WEISSINGER AND W. W. THUM FOR APPELLEES.

1. In the absence of statute no recovery could be had. Gambling con--
   tracts are against public policy. (Bispham's Equity, sec. 223, note 3;
   2 Kent, 46; Krauth, Ferguson & Co. v. Butcher's Sons, 14 Bush;·
   Sawyer, Wallace & Co. v. Taggart, 14 Bush; Bevil v. Hix, 12 B. M.;.
   4 Cranch, C. C., 423-4; *Idem*, 161; Carrier v. Brannin, 3 Cal., 328;
   Greenhood on Public Policy, 223, 237, 230, note 3.)

   Parties in *pari delicto* can not recover. (Downs v. Quarles, Litt.
   Sel. Cases; Tracy v. Talmadge, 14 N. Y., 162; Oscanyour v. Arms.
   Co., 103 U. S.; Love v. Harris, 18 B. M., 124; Bevil v. Hix, 12 B.
   M., 142; Graves v. Ford, 3 B. M., 113; Hickman v. Littlepage, 2·
   Dana. 344; Alfriend v. Hughes, 4 Bush, 41; Roberts v. Tennell, 3
   Mon., 252; Reed v. Harrod, Sneed, 166; Brittain v. Darling, 15 B.
   M., 140; Greenhood on Public Policy, pp. 77-82; Thompson v. Cum-
   mings, 68 Ga., 124.)

   Only in the case of fraud, or when one of the parties is under disa-
   bility, will the court interfere. (Webb v. Fulshire, 3 Ired. (N. C.),
   485; Ruchizky v. DeHaven, 97 Penn. St., 202.)

2. The gaming statutes should be, and *have always been*, construed strictly..
   (Virginia Statute, 1748; 1 M. & B., 749, sec. 8; Virginia Statute,.
   1779; 1 M. & B., 749; Kentucky Statute of 1798; 1 M. & B., 753;
   Downs v. Quarles, 5 Litt., 490; 1 M. & B., 751; Levy v. Perkins, 4
   Bibb, 505; Bess v. Shepherd, 2 Bibb, 225; Pryor v. Lucas. 3 Bibb,
   96; Act of 1799; 1 M. & B., 754; Bell v. Parker, 3 Dana, 51; Faris
   v. Kirtley, 5 Dana, 460; Cheek v. Commonwealth, 79 Ky., 359.)

   Notwithstanding Conner v. Ragland. 15 B. M., 635, a bet upon
   an election was not within the act of 1833, 1 M. & B., 758. (Graves
   v. Ford, 3 B. M., 113; Hickman v. Littlepage, 2 Dana, 345; Bevil
   v. Hix, 12 B. M., 140; Love v. Harris, 18 B. M., 122; Hutchings.
   v. Stillwell, 18 B. M., 776.)

3. The business of dealing in futures does not come within any of the·

Lyons v. Hodgen & Miller.

definitions of the word "wager," and, therefore, the facts alleged in the petition do not bring this case within the present gaming statute. (Gen. Stats., chap. 47, art. 1, sec. 2; Webster; Bouvier; Diggle v. Higgs, 46 L. J. Ex., 74; Cheek v. Commonwealth, 79 Ky., 361; Love v. Harris, 18 B. M., 124; Smith v. Commonwealth, MS. Op., Sept. 15, 1881.)

Similar statutes of other States are construed not to apply to such transactions. (Gregory v. Wendell, 39 Mich., 337; Thompson v. Cummings, 68 Ga., 124; Higgins v. McCrea, 116 U. S., 684; White v. Barker, 126 U. S.; Rudizky v. DeHaven, 97 Penn. St., 210.)

The act of the Legislature (Acts 1883-4, vol. 1, p. 192), declaring such transactions in Lexington to be gaming, was a legislative determination that, theretofore, they had not been gaming.

Rules for construction of statutes. (U. S. v. Fisher, 2 Cranch, 358; Atkins v. Disintegrating Company, 18 Wall., 272; Hadden v. Collector, 5 Wall., 107; Maillard v. Laurence, 16 How., 251; McCool v. Smith, 1 Black, 459; Platt v. Union Pacific, 99 U. S., 48; United States v. Union Pacific, 91 U. S., 72; Alridge v. Williams, 3 How., 9; Dist. of Columbia v. Wash. Ins. Co., 108 U. S., 245; Barbour v. City of Louisville, 7 Ky. Law Rep.; Brewer v. Blougher, 14 Pet., 178.)

4. To authorize a recovery under the statute the money must have been lost "at one time or within twenty-four hours," in sums of "five dollars or more," and the petition must so allege. The statute must be strictly pursued. (Downs v. Quarles, Litt. Sel. Cases, 469; Pryor v. Lucas, 3 Bibb, 97; Bliss v. Townsend, Sneed, 15.)

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant brought this action to recover of appellees sixteen hundred dollars, alleged in his petition to have been lost and paid by him and won and received by them in sums of more than five dollars at any one time between January, 1884, and January, 1886, in bets and wagers, between him and them upon the future rise and fall in price of petroleum, grain, provisions and stocks, which bets and wagers were determined, and settlements thereof made according to difference in each case, less commissions charged by them, between the contract price at time of a deal

and market price on the day for delivery of the property, which, however, was not nor intended to be delivered.

It is further stated that appellees, during the period mentioned, were engaged in the city of Louisville under name of the Louisville Cotton, Grain and Provision Exchange, in the business of gaming, speculating and wagering for money upon fluctuations of prices of the articles mentioned, none of which were actually sold and delivered; and while so engaged they won and received from appellant in the manner mentioned the amount sued for.

To the petition a general demurrer was sustained, and whether properly done depends upon the true construction and meaning of article 1, chapter 47, General Statutes, the sections of which relating immediately to the question are the following:

"§ 1. Every contract, conveyance, transfer or assurance, for the consideration, in whole or part, of money, property or other thing won, lost or bet at any game, sport, pastime or wager, or for the consideration of money, property or other thing lost or advanced at the time of any betting, gaming or wagering to a person then actually engaged in betting, gaming or wagering, shall be void."

"§ 2. If any person shall lose to another at one time, or within any twenty-four hours, five dollars or more, or property or other thing of that value, and shall pay, transfer or deliver the same, such loser, or any creditor of his, may recover the same, or the value thereof, from the winner, or any transferee of the winner, having notice of the consideration, by suit brought

within five years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to his indorsee, assignee or transferee. And if the conveyance or transfer were of real estate, or the right, thereto, in violation of the first section of this chapter, the heirs of the loser may recover it back by suit brought within two years after his death, unless it. shall have been passed to a purchaser in good faith for valuable consideration without notice."

Section 3 authorizes an action in equity for discovery and relief by such loser or his creditor, or the persons. designated in the preceding section, but when so obtained the winner shall be discharged from all penalty and forfeiture for having won the money or other thing which, or the value of which, is so recovered back.

Section 4 empowers any other person to sue the winner, and recover treble the amount or value of money or thing lost, if such loser or his creditors do not sue within six months after its payment or delivery.

Section 5 provides for recovery from a stakeholder any money or other thing that may be staked on any bet or wager. And succeeding sections of the same article provide fines, penalties and forfeitures when certain designated machines and contrivances used for betting are set up and kept; for fine of a person who invites, persuades or induces another to visit any place where gaming is carried on, and recovery from such person by the loser or his creditor of what may be lost in gaming at such place; and specific modes for punishing offenders and suppressing such games.

Article 2 relates alone to betting on elections, and provision is made not only for fines, but also for forfeiture to the Commonwealth of the money or other thing so bet and received.

Although section 1, article 1 seems to apply to executory contracts, the consideration of which, in whole or in part, is money or property won, lost or bet at some one of the specified forms of gaming, and, therefore, independent of the statute, void and unenforceable, it must, nevertheless, be taken and considered in connection with all other parts of the chapter in order to definitely and certainly ascertain and carry into effect the intention of the Legislature; for as each part relates to the subject of gaming, the inference is the entire chapter "was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions."

That policy, as clearly indicated, is to not only punish by fines and forfeitures for the offense of setting up and keeping certain designated games, which, by an act passed subsequent to adoption of the General Statutes, was made a felony, but to give to the loser or his heirs and creditors the right to recover from the winner money and property bet and lost in any game within purview of the chapter. But if the right to recover given by section 2, under which this action was brought, be decided, as is contended, not to relate to money lost in any one of the modes described in section 1, it is utterly without value or meaning.

It is, therefore, both a legitimate and decisive inquiry in this case whether the process by which appel-

lant, as alleged, lost to appellees the money sued for, can be properly denominated a wager, not, we think, being either a game, sport or pastime, according to common and approved usage of those terms; and if it can be fairly and legally thus classified, appellant has *prima facie* a cause of action.

In Smith, &c., v. Western Union Telegraph Co., 84 Ky., 664, this court used the following language in reference to parties engaged in the precise character of business described in appellant's petition: "They merely wagered on the market price of the commodity at some specified time in the future. A mere statement of the character of business done by them shows it to be a species of gambling as well defined and as reprehensible as that of keeping a faro bank or a dice machine, and is, therefore, illegal and contrary to public policy."

In Beadles, Wood & Co. v. McElrath & Co., 85 Ky., 230, it was held a contract in form, one for sale and future delivery of personal property, but made with no intention to deliver, but that, instead, the seller should pay or receive the difference between the contract price and market price on the day stipulated for delivery, is a mere wager, and can not be enforced by either party. The same ruling was, in substance, made in Sawyer, Wallace & Co. v. Taggart, 14 Bush, 727. And so has the peculiar business in question been characterized and denounced by courts generally elsewhere. It would, therefore, seem this court can not now consistently decide otherwise than that the process by which appellant lost and appellees won and received the money in contest was, in the mean-

ing of the statute, a wager, and, being so, the right to recover it exists under section 2, article 1.

It is, however, contended that the mode by which the money in question was bet, won and lost is not within the purview of chapter 47, because, first, it had not been contrived, nor was known to the Legislature in 1852, when the statute, as it now exists, was first embodied in the Revised Statutes; second, it is not comprehended by the language used in section 2. Whether it was known or devised as early as 1852 does not seem to us at all material; for the policy of the Legislature was then, as it is now, to give to a loser right to recover from the winner money or property "bet and lost at *any* game, sport, pastime or wager," no matter by what particular process or contrivance it might then or thereafter be done. It was the vice of gaming and its baleful consequences intended by the statute to denounce and provide against; and whatever mode then used, or has since been devised, which may be correctly denominated either a game, sport, pastime or wager, must be regarded as then and now in contemplation of the Legislature. It seems to us just as logical to say that the business or occupation in question is not against public policy, because not known or practiced in 1852, as that, for the same reason, a winner thereby may hold to his ill-gotten gains, or enforce his contract for payment of losses incurred by his dupe; for if that form of gambling is not within operation of the statute, no obstacle to recovery by a winner what may be lost by his customer exists at all. The language used in section 3 of the act of 1798, which gave right of recovery to the loser at any

game, is: "That if any person, * * at any time hereafter, *within the space of twenty-four hours*, by playing at any game, shall lose," &c.

That provision was evidently made with reference to money lost at cards or other like game, and would not be applicable to a wager of the character we are considering; but the language used in section 2, article 1, chapter 47, General Statutes, is: "If any person shall lose to another *at one time*, or within twenty-four hours, five dollars or more," &c.

It does not, in our opinion, make any difference when the bet or wager may be made, or how long it be pending and undetermined; but when there is lost at a wager as much as five dollars at one time, the right of the loser to recover it from the winner exists, and he may sue therefor, or for the aggregate amount so lost during a given period.

We think a cause of action was stated in the petition, and it was error to sustain the demurrer. Wherefore, the judgment is reversed, and cause remanded for proceedings according with this opinion.