CASE 63—INDICTMENT—MAY 18.

## Kneffler, &c., v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. DISORDERLY HOUSE.—An actual disturbance of the public peace is not indispensable to constitute the offense of keeping a disorderly house. It is enough that acts be there done contrary to law and subversive of public morals, health or safety.

2. SAME—GAMBLING IN FUTURES—A place where persons habitually assemble to bet or wager money or property on the prospective rise and fall in the prices of stocks, bonds, grain, etc., is, in law, a common gambling house, and the person owning and controlling it is guilty of the offense of keeping a disorderly house, although there is no penal statute applicable to that particular species of gambling.

Kneffler, &c., v. Commonwealth.

H. MARSHALL BUFORD FOR APPELLANTS.

The case at bar comes within the rules laid down in Sawyer, Wallace &
Co. v. Taggart, 14 Bush, 231, 232, and is unlike the cases of Smith v.
Western Union Telegraph Co., 84 Ky., 664, and Beadles, Wood &
Co. v. McElrath & Co., 85 Ky., 230.

W. J. HENDRICK, ATTORNEY-GENERAL, AND R. REID ROGERS
FOR APPELLEE.

The "buying" and "selling" of stocks, grain, &c., without any intention
of making actual delivery or of receiving the property so bought or
sold, but merely for the purpose of speculating on the prospective
rise and fall of prices, constitutes gambling, and a place where per-
sons habitually assemble for that purpose is a disorderly house.
(Smith v. Western Union Telegraph Co., 84 Ky., 664; 6 Am. & Eng.
Enc. of Law, 101; Cheek v. Commonwealth, 79 Ky., 359.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellants were convicted of the offense of keep-
ing a disorderly house, charged in the indictment
to have been committed by them in occupying and
controlling, under the firm name of G. W. Kneffler
& Co., a house in the city of Lexington, where they
unlawfully permitted divers persons to habitually as-
semble and habitually engage in betting, winning and
losing money and property, on the prospective rise
and fall in stocks, bonds, grain and other produce,
to the common nuisance and annoyance of all citizens
of the Commonwealth of Kentucky, and especially
those living in the neighborhood of said house and
passing same.

An actual disturbance of the public peace is not
indispensable to constitute the offense of keeping a
disorderly house. But it is enough that acts be there
done contrary to law and subversive of public morals,
health or safety. And, consequently, it has been
held by this court that a common gaming house is in

legal contemplation a disorderly house. (Cheek v. Commonwealth, 79 Ky., 359.)

The first question then is, whether the house of appellants, kept and used for the purpose and in the manner described in the indictment, is a common gaming house?

The purpose for which the house was kept and persons assembled there was, as stated in the indictment, simply to bet or wager money or property on the prospective rise and fall of stocks, bonds, grain and other produce. There is no suggestion in the indictment that the business of buying and selling, accompanied with delivery of any of the articles mentioned, was carried on there. Consequently, as said in Smith v. Western Union Telegraph Co., 84 Ky., 664, in regard to a similar establishment, "a mere statement of the character of business done by appellant shows it to be a species of gambling, as well defined and as reprehensible as that of keeping a faro-bank or a dice machine, and is, therefore, illegal and contrary to public policy." In that case, upon the ground "appellant was engaged in a gambling enterprise, contrary to law, good morals and public policy," the telegraph company was relieved of any obligation to transmit messages as a means of carrying on his illegal business.

In Beadles, Wood & Co. v. McElrath & Co., 85 Ky., 230, it was held that a contract, though in form one for sale and future delivery of personal property, yet entered into with no intention to deliver, but to be carried out by a mere settlement of difference between the contract price and market price on the day for

delivery, is a mere wager not enforceable. And in Lyons v. Hodgen & Miller, 90 Ky., 280, it was held such contract was, in meaning of sections 1 and 2, article 1, chapter 47, General Statutes, a wager, and a party was entitled to recover back from another engaged in such transaction, money lost by wagering upon future rise and fall in price of bonds, stocks, provisions or other personal property, and paid in settlement of differences between contract and market prices, when no delivery was made or intended.

There does not seem to be any penal statute applicable to that particular species of gambling. But it seems to us clearly that the place where it is habitually carried on is, in law, a common gambling house, and the person owning and controlling it guilty of the offense of keeping a disorderly house.

The instruction given to the jury fully and accurately states the circumstances and conditions that must exist, in order to constitute the offense charged in the indictment, and as there was, in our opinion, evidence to support the verdict, the judgment is affirmed.