## Enright v. Commonwealth.

(Decided November 9, 1920.)

### Appeal from Kenton Circuit Court.

1. Nuisance—Wagers on Horse Races—Indictment.—An indictment which charges the defendant with the offense of maintaining a public nuisance, specifying that the defendant kept a room in a certain house in which he maintained a telephone and received from divers and sundry persons bets and wagers on horse races or pretended horse races to the common nuisance or annoyance of all citizens, was sufficient to inform the defendant of the nature of the charge against him and was not demurrable.

2. Indictment and Information—Requisites and Sufficiency.—An indictment which contains allegations unnecessary to the stating of the charge against the defendant is not necessarily bad but the unnecessary averments may be treated as surplusage.

3. Nuisance—Criminal Prosecution.—One may be convicted of the offense of maintaining a common nuisance even though there is no noise or disturbance about his place of business if the business in which he is engaged is a violation of the law and the unlawful acts are constantly repeated.

4. Criminal Law—Appeal and Error.—This court will not disturb a verdict as excessive which fixes a fine for the violation of a common law offense.

WILLIAM A. BYRNE for appellant.

STEPHENS L. BLAKELY and CHARLES I. DAWSON, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In February, 1920, Enright was indicted by the grand jury of Kenton county, for the offense of maintaining a common and public nuisance. He was tried in February following, found guilty and fined $2,500.00. He appeals.

As grounds for a reversal of the judgment he asserts (1) the indictment is defective; (2) the verdict is against the evidence; (3) the verdict is excessive; (4) the verdict was the result of passion and prejudice.

The indictment accuses Enright of maintaining a public nuisance by having a room in a certain building in the city of Covington wherein he maintained a telephone, and where he received from divers and sundry persons "bets and wagers on horse races or pretended horse races, one or the other being true, but which being to the grand jury unknown, and said room was by said Enright kept and

controlled for such purpose, to the common nuisance and annoyance of all citizens of the Commonwealth.''

Complaint is made that the indictment is bad, and this is founded upon the fact that the indictment in addition to charging the crime for which Enright was tried and convicted, further charges that ''Enright wilfully, knowingly and unlawfully suffered and procured and permitted divers idle and ill-disposed persons to habitually frequent and assemble in a certain room in his possession and under his control, and there be and remain and habitually and unlawfully engage in the habit of betting, winning and losing money on horse races.''

This allegation was wholly unnecessary and there was no proof adduced to support it; but it did not render the indictment bad, for it was mere surplusage.

The evidence shows without equivocation that Enright had rooms Nos. 410 and 415 in the Coppin building at the northeast corner of Seventh and Madison avenues in the city of Covington, Kenton county, Kentucky, in which he maintained a commission betting business. The room was furnished with a desk on which was situated a telephone exchange with two or three receivers and at least three trunk lines and other connections. There was certain horse racing paraphernalia about the place, such as racing forms, charts and a book of codes and cards. He occupied this room and conducted the business for several weeks before his arrest and indictment. Several witnesses testify that he had said to them that he was operating a commission betting business. A number of other witnesses testify to having placed bets on horse races with him by calling him over the telephone; that he received their bets and claimed to have transmitted them to a certain office in New York and that later they received money by check from that office, or transmitted money to said office in case they lost the bet. One witness when asked what Enright's business was, answered:

''I placed a bet, and he would wire his father, in New York. Q. Tell the jury what you would do? A. Just as I said—if I wanted to place a bet, I would call up Neal and he would wire his father, and let me know if it was all right. He couldn't take it himself. He had to wire his father, and then let me know. Q. To whom did you pay the money? A. To C. J. Enright, 80 Wall street, New York. . . . Q. Where would you send this check? A. To 80 Wall street. Q. You would telephone Mr. Neal Enright? A. Yes, sir; I would ask him to wire his father in

New York and then he would say it was all right. Q. Did you bet him every day? A. No, sir; not every day. Q. As often as once a week? A. Yes; usually. Q. Did you ever bet more than once a week? A. Sometimes. Q. How many bets would you make a day at the most? A. Two or three. Q. What would they amount to? A. Five hundred to a thousand dollars. Q. Five hundred to a thousand dollars each? A. Yes. Q. Did you make any smaller bets than five hundred dollars? A. Yes, sometimes. Q. What was the smallest bet you would make? A. About two hundred dollars. I don't think it was ever less than two hundred dollars.''

With this and other evidence introduced on the trial there can be no doubt whatever that Enright was maintaining a place properly equipped for receiving bets over the telephone and transmitting them to the proper race track or other connection through which he operated. In other words he was conducting or aiding in the conduct of a pool room or handbook establishment. When stripped of all its outward form he was engaged in a scheme and device for placing bets upon horse races, or pretended horse races.

Enright was not indicted under our statutes, section 3914b, which relates to operating pool rooms and betting on horse races under that system, but he was indicted under the common law for a public nuisance.

It is plain that Enright was engaged in receiving bets and therefore was aiding in betting in violation of law. Such an act is a public offense. In the case of Ehrlick v. Commonwealth, 125 Ky. 746, we adopted the following definition: ''A nuisance *per se* is any act, or omission or use of property or thing, which is of itself hurtful to the health, tranquility, or morals, or outrages the decency of the community. It is not permissible or excusable under any circumstances.'' We also held in the same case that a gambling game in order to become a nuisance need not be visible from the outside. Moreover, we held that under a charge of maintaining a public or common nuisance where the thing is *per se* a nuisance, as in this case, or as a pool room or other gambling house is, it is no defense that there was no noise or disturbance or that the community was not disturbed by its presence.

In the instant case there was no evidence of a disturbance or noise in or about the office of Enright, but this did not save it from becoming a nuisance if he was receiving bets on horse races, and this business had con-

tinued from day to day, for such unlawful acts under constant repetition become a public nuisance even though they are secret and unknown to the public generally. Kneffler v. Commnowealth, 94 Ky. 359; King v. People, 83 N. Y. 589; Moses v. State, 58 Ind., 185; Seacord v. People, 121 Ill. 623, 13 N. E. 194. Ehrlick v. Commonwealth, 125 Ky. 742.

We do not think the verdict excessive. It was wholly within the discretion of the jury to fix a fine at any sum warranted by the evidence, and we are not prepared to say that a fine of $2,500.00 for conducting a public nuisance of the kind described in the evidence was out of proportion to the nature and wickedness of the offense committed. We know of no rule requiring a court of review to set aside a fine for excessiveness where the party has been found guilty by a jury, for in the jury rests the sole power of fixing the punishment within the limits prescribed by law.

It is said in 16 Corpus Juris, page 1364, that whether the punishment assessed is excessive must depend upon the circumstances of each particular case. In some jurisdictions it is held that any punishment within the limits fixed by statutes is not excessive. In other jurisdictions, and this includes Kentucky, the rule is that the discretion in fixing the punishment is vested in the jury and not in the court.

In the case of Cornelison v. Commonwealth, 84 Ky. 583, we held that for a common law misdemeanor no limit should be placed upon the discretion of the jury in fixing the punishment. In that case, assault and battery, the jury fixed the punishment at a fine of one cent and three years' confinement in the county jail, and it was held not excessive.

No error appearing to the prejudice of appellant, the judgment is affirmed.

Judgment affirmed.