Case 31—INDICTMENT—April 28.

# Commonwealth v. T. J. Megibben Company.

### APPEAL FROM HARRISON CIRCUIT COURT.

1. Nuisance—Sufficiency of Indictment for.—An indictment charging the defendant with suffering and keeping a nuisance by maintaining cattle-pens in which a large number of cattle were confined, and from which the filth and excrement were permitted to accumulate so as to poison the air, and were permitted to flow into a stream by which the waters thereof were rendered impure and poisonous, whereby the fishes therein were killed, does not charge two offenses, the averments as to the poisoning of the air and the killing of the fishes being merely constituent elements going to make up the nuisance.

2. Limitation—Re-Referring Indictment to Grand Jury—Continuous Prosecution.—Where an indictment does not allege that the offense charged was committed within twelve months next before the finding of the indictment, but shows on its face that the offense charged was committed more than a year before the finding thereof, the statute of limitations operates as a bar to the prosecution and a demurrer to it should be sustained. And the averment in the indictment that "the offense herein charged is the same offense charged in indictment No. 1014, filed in this honorable court on February 16, 1896," does not make the prosecution in the former indictment a continuous one and prevent the statute from running. A prosecution will not be regarded as a continuation of a former prosecution so as to avoid the statute of limitations, unless it alleges the facts as to the former indictment, its dismissal, re-reference to the grand jury, etc., and clearly shows on its face that the prosecution was intended to be a continuous one.

3. Abatement of Nuisance—No order abating a nuisance can be obtained unless the location thereof is set out, but such an averment as to the location is not necessary to the sufficiency of the indictment.

4. Nuisance—Form of Indictment.—In an indictment charging a nuisance in the manner of following a lawful occupation, which in itself is not a nuisance, the conclusion of the indictment that it was "to the common nuisance of all good citizens" is not sufficient, but it should have charged that it was to the common nuisance of all persons there living and abiding, or of all

persons there passing and repassing, and having a right to pass, or the indictment itself should have shown proximity to human habitation and highways, and the use of the streams which would be damaged by pollution.

W. S. TAYLOR AND J. T. SIMON FOR APPELLANT.

1. The conclusion in the indictment that it was to the common nuisance of all good citizens, and against the peace and dignity of the Commonwealth of Kentucky, is sufficient. Sec. 123, Criminal Code; Smith v. Commonwealth, 6 B. M., 21; Wilson v. Commonwealth, 12 B. M., 4; Bishop's Crim. Procedure, vol. 2, secs. 863 and 865; Commonwealth v. Mahon, 2 Smith, Penn., 243; Mains v. The State, 42 Indiana, 327.

2. When any one uses his property so as to endanger the lives or health of another then he is guilty of an offense, and when the facts are so alleged as to show such a state of affairs to be suffered by any one, or existing to the hurt or injury of the public, a public offense has been charged. Cincinnati, &c. Ry. Co. v. Commonwealth, 80 Ky., 136.

BLANTON & BERRY FOR APPELLEE.
(Brief not in the record.)

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment sustaining a demurrer to an indictment charging appellee with the offense of suffering, keeping and maintaining a nuisance, committed as follows, viz: "The said T. J. Megibben Co., a corporation called the T. J. Megibben Co., on the — day of September, 1895, in the county and State aforesaid, and before the finding of this indictment and on divers other days theretofore and thereafter to-wit: At least three hundred and sixty-five days, did unlawfully and willfully keep, suffer and maintain a nuisance, to-wit: Said defendant kept and maintained cattle pens, in which a great number of cattle and other animals were kept confined, and the excrements and drop-

Commonwealth v. T. J. Megibben Company.

pings of said animals suffered to accumulate, as well as slop and other deleterious refuse matter to likewise accumulate, become obnoxious, offensive, putrid, impure, unhealthy and poisonous, corrupting the air, and the said matter so accumulated to flow into, pass into Woods run, a tributary of South Fork of Licking river, and thence into the said South Fork of Licking river, thereby rendering the water in said streams for a great distance impure, unhealthy, unwholesome, poisonous and unfit for man or beasts, and poisonous as to kill and injure fishes in said streams, as well as render the air unhealthy, noxious, impure and poisonous. The offense herein charged is the same offense charged in indictment No. 1014, filed in this honorable court on February 16, 1896. And to the common nuisance of all the good citizens. Against the peace and dignity of the Commonwealth of Kentucky."

The objections to this indictment urged by appellee in support of the judgment of the trial court are as follows: First, that the indictment attempts to charge two offenses, the killing of the fish, which is a statutory offense, and the corruption of the air. We do not think that the averment as to killing the fish necessarily makes the indictment duplex, as it is averred merely as one of the constituent elements going to make up the nuisance. As in the case of an indictment for the nuisance of keeping a disorderly house there are frequently alleged various statutory or common law offenses, such as gaming.

The second objection to the indictment is that it on its face shows that the offense charged was committed more than a year before the 14th day of September, 1896, when

the indictment was returned, and, therefore, the statute of limitations is a bar to the prosecution. In this case we regard this objection as valid. It is not alleged that the offense was committed within twelve months next before the finding of the indictment, and, applying the rule *fortius contra profentem*, which applies more strongly in criminal than in civil cases, we must assume, that under the averments of the indictment, the offense might have been committed more than a year before the indictment was returned. "Unless an indictment for a misdemeanor is returned within twelve months after the commission of the offense the statute of limitations operates as a bar to the prosecution; therefore, time is a material ingredient in the offense, and if the indictment fails to allege that the offense was committed within twelve months before the finding of the indictment, and the date alleged shows that it was committed more than twelve months before the indictment was returned, a demurrer should be sustained." (Williams v. Commonwealth, 18 Ky. Law Rep., 667; Commonwealth v. Cain, 14 Bush, 525).

On the other hand, it is claimed on behalf of the Commonwealth that this prosecution was a continuous one, the indictment containing the statement that "the offense herein charged is the same offense charged in indictment No. 1014, filed in this honorable court on February 16, 1896." This statement fails, however, to show whether the other indictment was pending, or whether it had been quashed and the case re-referred to the grand jury, or whether it had been been dismissed by the Commonwealth's attorney and re-referred. In N. N. & M. V. R. R. Co. v. Commonwealth, 14 Ky. Law Rep., 197—following Tully v. Commonwealth, 13

Busb, 153—it was held that a new indictment found by a grand jury, to which the prosecution has been re-referred, can not be regarded as a continuation of a former prosecution so as to avoid the statute of limitations unless it alleges the facts as to the former indictment, its dismissal, etc., and thus clearly upon its face shows that the prosecution was intended to be a continuous one.  In that case the court said that it might well be asked, if the Commonwealth intended the indictment to be a continuous prosecution, why issue a summons to bring appellant before the court when by the order re-referring the first prosecution to the grand jury, it was already before the court to answer a new indictment, if one was found.  In this case also, a summons was issued upon motion of the Commonwealth's attorney.

The third objection to the indictment is that the object desired being an abatement of the nuisance, the location must be set out in the same manner as the place of a forcible entry where restitution is to be awarded (2 Bishop's Criminal Procedure, 866).  While it is entirely true that no order of abatement could be obtained unless the location were so given, such an averment is not necessary to the sufficiency of the indictment.

The fourth objection to the indictment is that where the acts complained of as constituting the nuisance are neither *mala in se* nor *mala prohibita* the indictment must conclude with the allegation of "to the common nuisance of all good citizens there passing or re-passing or having the right to pass or repass," or "to the common nuisance of all persons there residing or living," and that a mere conclusion of "to the common nuisance of all good citizens" is not sufficient;

and appellant insists that it is settled by the cases of Smith
v. Commonwealth, 6 B. M., 621, and Wilson v. Common-
wealth, 12 B. M., 24, that the latter conclusion is sufficient.
It has also been held, in Commonwealth v. Enright, 17 Ky.
Law Rep., 1183, that the conclusion to an indictment for a
nuisance, that the acts were done "to the common nuisance,"
etc., were not essential to constitute a good indictment,
being, as said in 2 Bishop's Criminal Procedure, section 864,
"a mere superfluous statement of a mistaken conclusion of
law" if the facts alleged in the indictment were insufficient
to constitute a good indictment. But we think there is a
distinction between the case of an unlawful occupation
which would constitute a nuisance to the community, wheth-
er near to it or remote, and the case of a lawful trade, which
might or might not be a nuisance according to its position.
Says Bishop, in his Criminal Law, volume 1, section 1142:
"Now in reason no useful trade can be a nuisance *per se*,
because every such trade must be carried on somewhere, and
it is a nuisance or not according to the manner in which it
is conducted and its proximity to habitations and public
ways."

The cases in 6 and 12 B. M. were cases of disorderly
houses, while the Enright case was a case of keeping a
poolroom—occupations in themselves nuisances—but the
keeping of cattle pens is, in itself, a lawful occupation, and
unless so carried on as to create damage is not *per se* a
nuisance. "The gist of the action of nuisance is damage,
and so long as there are damages there are grounds for an
action." (Judge Holt, in the case of the Farmers of Hemp-
stead, 12 Mod., 519). In the case of Scott v. Firth, 4 F. & F.,

349, it was held that "to constitute a nuisance there must be real and sensible damages, having regard to the situation and use of the property injured." And, further, "it is a well settled rule of law that in order to constitute the pollution of water a nuisance it must be shown to be such as to operate as a violation of some right, either primary or secondary." (Wood on Nuisances.)

We think, therefore, that there should either have been a conclusion to the common nuisance of all the persons there living and abiding, or of all persons there passing and re-passing and having the right to pass, or else that the indictment itself should have shown proximity to human habitations or highways, and the use of the streams which would be damaged by their pollution.

The judgment is affirmed.