## City of Richmond v. House, et al.

(Decided November 20, 1917.)

### Appeal from Madison Circuit Court.

1. Nuisance—Public Nuisances—Injunction.—An injunction will not lie to prevent the operation of stock yards not used for slaughtering purposes, but used for marketing and shipping purposes only three or four days in each month, on the ground that their operation will result in a public nuisance, where the evidence fails to show that a nuisance actually exists or that the stock yards are a nuisance per se, even if properly conducted.

2. Municipal Corporations—Ordinance—Reasonableness and Uniformity.—An ordinance making it unlawful for any person to open, carry on or operate any butcher shop, slaughter house, glue factory, brewery, distillery, livery stable, blacksmith shop, stock yards or foundry, within the limits of the city without the permission of the board of council, granted at a regular meeting thereof, is invalid in fixing no standard for determining whether a permit shall be granted and so clothing the board of council with power of arbitrary determination.

H. C. RICE, W. L. WALLACE and CHENAULT, WALLACE & WALLACE for appellant.

STEPHEN D. PARRISH, BURNAM & BURNAM and A. R. BURNAM for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The city of Richmond brought this suit against A. J. House and Ed. Million, to enjoin them from operating certain stock yards or cattle pens, on the ground that they would prove a public nuisance. Being denied the relief prayed for, the city appeals.

The building where the stock yards are conducted is located on the corner of East Main street and Big Hill avenue, in the city of Richmond. Prior to its purchase by appellees, it was used as a loose-leaf tobacco ware-

House. **No stock** of any kind were ever slaughtered on the premises, **nor** are the stock yards used in connection with packing and slaughter-houses. The yards are not used continuously .for housing cattle, but only for a day or two prior and subsequent to county court days on the first Monday in each month. The cattle are not housed in open pens, or open sheds, but in a large substantial building entirely covered with metal. While there are a number of residences in the neighborhood of the stock yards, and while the Christian church is located within about twenty feet of the building, the neighborhood is not exclusively a residence part of the city. The stock yards are near the freight and passenger depot of the L. & N. Railroad, and not far from its loading pens. Nearby is a baseball park, which is frequently occupied by carnival companies, and around the depot are restaurants, coal yards, an ice factory and other business enterprises. Within a quarter of a mile of the building in question are other stock yards. It further appears that Richmond is a great stock market and that just prior to each court day large numbers of cattle are brought there for sale and shipment. One of appellant's witnesses testified that on a certain Sunday, the noise from the stock yards was so great the windows of the Christian church had to be pulled down. Others who were present on that occasion say that they heard no noise. While several witnesses gave it as their opinion that the presence of the cattle in the pens would necessarily result in such loud noises and offensive odors as would seriously interfere with the comfort and health of the surrounding inhabitants, no discomforts or ill effects therefrom were shown to have existed up to the time of the trial. Indeed, the whole of the evidence bore on the probability of a nuisance being created, rather than on the fact that any nuisance then existed. The opinions of the witnesses were based on their experience with other stock yards. It was also shown by appellees that the offal from the cattle was immediately disposed of to truck gardeners, and that they had no difficulty in keeping the building clean. There was further evidence to the effect that the stock yards nearby, although not so well equipped as those of appellees, had not proven a nuisance.

1. It is the well-established rule that an injunction will not be granted against a threatened nuisance, when the thing complained of is not *per se* a nuisance, but may or may not become so according to circumstances. This rule was applied where it was sought to enjoin the opera-

tion of a beer garden. Pfingst v. Sell, 94 Ky. 561, and a baseball park, Alexander v. Tebeau, 24 Ky. L. R. 1305, and the erection of a livery stable located within twenty-seven feet of a church, Albany Christian Church v. Wilburn, 112 Ky. 507. In the last mentioned case, the court quoted with approval the following from the opinion in St. James Church v. Arrington, 36 Ala. 546, 76 Am. Dec. 332:

"A private stable near a church does not belong to the class of erections which are unavoidable and in themselves nuisances. That it may become a nuisance is, no doubt, true; but the question whether or not it will prove to be one depends in a great measure upon its proximity to the church, the manner in which it shall be built, the number of horses placed in it, and the degree of care with which it may be kept. . . . Whenever it is legally ascertained that it has become a nuisance, a court of equity will protect by injunction any party injured thereby. But as in the present case it is yet uncertain, and remains to be ascertained from future events, whether or not the erection will become a nuisance, there is no ground for an injunction arresting the further progress of the building, or its appropriation to the use intended."

In view of the fact that the stock yards will be operated for only three or four days in each month, that no nuisance was shown to exist at the time of the trial, and that the stock yards nearby had not proven to be a nuisance, although not as well equipped for handling stock as the stock yards in question, we are unable to say that the latter is a nuisance *per se*. On the contrary, it is clear from the evidence that the question whether they will prove to be a nuisance, will depend almost entirely on the manner in which the business is conducted. Since the apprehended injury is therefore doubtful, uncertain and contingent, the chancellor did not err in refusing the injunction on the ground that the stock yards would prove a nuisance.

2. Another ground urged for the injunction is, that appellees failed to get a permit under the following ordinance:

"It shall be unlawful for any person or corporation to open, carry on, or operate any butcher shop, slaughterhouse, glue factory, brewery, distillery, livery stable, blacksmith shop, stock yards or foundry within the limits of the city without the permission of the board of council granted at a regular meeting thereof, upon written

application; but any of said business or trades now in operation in the city are exempt from this ordinance.

"(2) Any person violating the provisions of this section shall be fined not less than five dollars nor more than fifteen dollars for each day said business is opened, carried on or operated, without said permission."

It will be observed that this ordinance does not prescribe any rules or conditions with which the applicant must comply, or by which the board of council is to be governed in determining whether the permit will be granted or refused. On the contrary, the board of council is vested with an arbitrary discretion, which it may exercise in favor of one citizen and against another, although the circumstances may be practically the same. It follows that the ordinance is invalid and the injunction was properly refused, because of its alleged violation. City of Monticello v. Bates, 169 Ky. 258, 183 S. W. 555; City of Richmond v. A. J. House, &c., 177 Ky. 829.

Judgment affirmed.