### Cartwright v. Commonwealth.

(Decided October 10, 1922.)

### Appeal from Warren Circuit Court.

1. Intoxicating Liquors—Master and Servant.—One charged with the offense of having in possession an illicit still, is not guilty of the offense, where the still was put into his place of business by a servant of his, but without the knowledge or authority of the master, either express or implied.

2. Intoxicating Liquors—Principal and Agent.—The authority of the agent to commit the unlawful act need not be expressly proven, but, it may be shown by any competent evidence, circumstantial or otherwise.

N. P. SIMS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

The appellant, John F. Cartwright, was indicted for a violation of section 2554d-1, Ky. Stats., 1922 edition, which is an act of March 29, 1918. The offense of which the indictment accused him occurred, if at all, before the enactment of the general prohibition statute of 1922, which went into effect on March 22, 1922, and after the enactment of the prohibition act of 1920, which became effective July 1st, 1920. The indictment charged the commission of several different offenses, among which were unlawfully buying, bargaining, selling, loaning, having in possession, owning and operating an illicit "moonshine" still, and aiding, abetting and assisting in such operation, and harboring a person in the operation of an illicit or "moonshine" still. As a matter of course, the indictment was properly subject to a demur-

rer as violative of the provisions of section 126, Criminal Code, and a demurrer was seasonably interposed. Section 168, Criminal Code, provides that if an indictment improperly charges more than one offense, the attorney for the Commonwealth may dismiss all but one and thereupon the demurrer shall not be sustained upon the ground that the indictment charges more than one offense. The record recites that the proceedings in reference to the demurrer occurred in the following sequence. The demurrer was sustained, thereupon the attorney for the Commonwealth elected to prosecute the appellant under the indictment for the offense of unlawfully having in his possession an illicit or "moonshine" still, and dismissed the other offenses charged therein, and asked the permission of the court so to do, and same was granted by the court over the objection of appellant. The latter then demurred to the indictment containing as it did the one offense of unlawfully having in possession an illicit or "moonshine" still. This demurrer was overruled. The appellant now insists that the court erred to his prejudice in not dismissing the indictment *in toto,* when the demurrer was sustained, and in permitting the election to be made after the demurrer had been sustained; that if an election was desired it should have been made before the demurrer was sustained, as after that time the indictment was invalid and a prosecution could not be had under it for anything charged in it. The recited actions of the court and the attorney for the Commonwealth all occurred at the same time, and the effect of the rulings of the court was to sustain the indictment when the election was made and the other offenses dismissed, and the same result was attained as if the court had refrained from entering the order sustaining the demurrer until after the election was made and the other offenses dismissed, and then formally overruled the demurrer. It must be admitted that the logical course to have pursued would have been for the attorney for the Commonwealth to have made his election and dismissed the other offenses, and this would have left a good indictment to which the court should have then overruled the demurrer, but under the circumstances to hold that the action of the court was fatally defective and prejudicial to appellant would be extremely technical, and not justified by the canons of common sense, as the end in view prescribed by the Code, which could be attained, was at-

tained by the course pursued, although somewhat irregular, but the action of the court was in no wise prejudicial to the rights of appellant.

The overruling of the demurrer to the indictment, after the election was made and the other offenses charged in it had been dismissed, was not error. Unlawfully having in possession an illicit or "moonshine" still was made a public offense by the act of 1918; so far as it created a public offense out of an act of that kind, it was not repealed by the act of 1920. The latter act did not by its terms necessarily supersede the act of 1918 so far as the act of 1918 made it unlawful to have an illicit or "moonshine" still in possession, and the offense for which appellant was indicted appears to have occurred before the effective date of the act of 1922.

It is, also, insisted that the court erred to the prejudice of his substantial rights in not sustaining the motion of appellant to direct a verdict of acquittal at the close of the evidence for the Commonwealth, and at the close of all the evidence, and failing to properly instruct the jury as to the entire law controlling the issues of the case.

(a)   The evidence proved that the appellant was a merchant tinner in the city of Bowling Green, and carried in his stock, regularly, sheet copper, coiled copper pipe and containers of various kinds and sizes, oil cans and cans for cooking, and was assisted in the conduct of his business by a clerk and several workmen, who did for customers such work in the preparation of vessels and other articles connected with the trade, as is usually performed by persons in that line of business, and without specific directions in each case from the appellant, but acting by his general authority as being within the scope of their employment. The Commonwealth's attorney introduced certain officers as witnesses, who testified without objection that, armed with a search warrant, they searched the house in which appellant conducted his business, and that when they entered the front entrance to the place that a young man escaped out of the back way, and they found there as a result of their search what they denominated a "moonshine" still. It was as the witness expressed it "boxed up." The box contained a copper can, with a spout and screw top similar to an ordinary oil can, and with it in the box was another copper can with a demountable top. The top of the latter

can had been removed and in its place there had been soldered the opening of a radiator of a Ford automobile, and in the center of the top a piece of copper pipe about five or six inches long. In the can into the top of which the opening of the radiator and the piece of copper pipe had been soldered, there was a piece of coiled copper pipe which was not attached to either can. No intoxicating liquor had ever been distilled by this device, and none could be made from it until the cans were connected by the coiled copper pipe, and it would be necessary to have the services of a skilled mechanic to make such connections. Such articles could be and were used in the distillation of intoxicating liquors, and if the cans were connected by the coil of copper pipe it would be such a device in character as could be and is commonly used for the distillation of intoxicating liquors. The appellant was not present when the search was made and the articles found in his place of business. The appellant deposed that he had been engaged for many years in the business of a merchant tinner, and that the can with the spout and screw top was an oil can, and the same as usually carried by him in stock; that the other can was a kind of can which he carried in stock, and which with its ordinary top was used by persons who were engaged in a business requiring the cooking of food in considerable quantities; that the cans and pipe were not sold by him, but were sold by his clerk without his knowledge, and that the opening of the radiator of the Ford automobile and the piece of copper pipe were soldered into the top of one of the cans by one of his workmen for the customer who purchased the articles, but that same was done without the knowledge of appellant, and that appellant had no knowledge of the existence of the articles assembled in the box, or the fact of their being in his place of business, until he was arrested and accused of an offense connected with it. He further deposed that he regularly carried in his stock for sale copper pipe of the kind, as well as did all other merchants of his kind, and the keepers of garages, and that he did not know for what purpose the purchaser intended to use the articles. The ruling of the court to the effect that the foregoing constituted sufficient evidence of the guilt of appellant as to justify the submission to the jury is chiefly assailed upon the ground that the evidence fails to show that the outfit constituted a still for the distillation of intoxicating liquors, within

the meaning of the statute. In this we can not agree with appellant. To constitute the offense denounced the statute does not require the possession of a complete still, or one which is ready for operation for the distilling of spirits, without further acts being necessary to make it a complete device for that purpose. The articles disconnected do not, it must be conceded, constitute a complete still, upon which intoxicating liquors may be produced, but section 2554d-3, Ky. Stats., provides that "an illicit or 'moonshine' still under this act shall include an outfit or parts of an outfit commonly and exclusively used in the distillation of spirituous liquors, . . . " The possession of parts of an outfit, the parts not being such as are commonly and exclusively used in the distillation of intoxicating liquors, could not and would not constitute the offense, but the evidence for the prosecution tends to prove that the can with the radiator and pipe soldered in the top when used with the other appliances, is a device of a character that is commonly and exclusively used in the distillation of spirits, and there is no evidence that such a device can or is ever used for any other purpose. It appears that all of the parts necessary to constitute a still for the distillation of intoxicating spirits were present, and all that was necessary to accomplish the fact was to connect the two containers with the coil of copper pipe. It is, however, said that according to the evidence it would require the services of a skilled mechanic to do that. If all the constituent parts of an ordinary regulation still were present but disconnected, it would probably require the services of one having knowledge of the subject and of the construction of a still, and skilled in the business, to properly connect and put them together, before liquors could be distilled, and no one would question but what such a state of facts would bring the acts within the statute as a public offense. That the device had never been used for the purpose of distilling spirits is immaterial, as such fact would be if the possession was had of a regulation new still which had never been used, and about whose capacity to produce intoxicating liquors there was no doubt. So we are of the opinion that the evidence was sufficient to submit to the jury for its determination whether or not the articles were such as constituted a "moonshine" still within the meaning of the statute.

(b) That the evidence tended to prove that the device or contrivance was in the possession of appellant

there can be no doubt, as it was in a business house of which he had the possession and wherein he was conducting his business operations; the persons employed therein were his servants and who, if authorized by him so to do on his account, were to take the still in possession would make him guilty of the offense charged, as one may commit an offense through an agent as well as in person, and the circumstances considered were such as to tend to prove that the appellant had knowledge of the possession of the device and consented thereto and although denied by him, it was a question properly submitted to the jury.

(c)    The offense of which appellant was convicted was unlawfully having in his possession the articles constituting the alleged still. He deposed that he had no knowledge of their presence in his house or of their being in his possession, in the character, in which they were found, until he was arrested and charged with the offense. If his testimony was true, which was a question for the jury, the act for which he was convicted was committed by one or more of his servants, without his knowledge or authority. As heretofore stated a principal can be made penally responsible for an unlawful act, committed by his agent, but to effect such result, the agent must have either express or implied authority from the principal to do so, and if he does not have such authority, the principal is not responsible. The authorization may be proven by any competent evidence, circumstantial or otherwise. If the act committed by the agent was one within the scope of his employment, implied authority from the principal is proven in accordance with the rule, which was familiar, when one could obtain a license to sell liquors and he employed another to sell the liquors, and thereby made himself liable for any illegal sale, although made without his knowledge or express authority. Evidence, that the act was committed by the agent in the business house of the principal and in the conduct of the principal's business, is held generally to make a *prima facie* case of implied authority. It is not necessary to prove express consent by the principal to the agent's unlawful act. As said in Knight v. Com., 194 Ky. 567, "An agency may be established by proof of the conduct of the principal and agent, the relation of each to the transaction involved, and the circumstances surrounding the transaction, all of which makes the ques-

tion of agency, one to be determined by the jury." No direct evidence, however, appeared in this case, which tended to prove that the act of taking the still in possession, was one within the scope of the employment of any agent of appellant, as there was no evidence, that the appellant was engaged in the business of storing stills. The court gave no instruction to the jury embodying the principle above stated, which would have enabled the jury to have found the appellant not guilty, if the still was stored in his house, without any authority express or implied from him, and this failure was prejudicial to the substantial rights of the appellant, as he was entitled to have his responsibility for the act, for which he was convicted, determined by the jury, under instructions defining his rights.

The judgment is therefore reversed and cause remanded for proceedings not inconsistent with this opinion.