## Curd v. Commonwealth.

(Decided October 16, 1925.)

### Appeal from Mercer Circuit Court.

1. Indictment and Information—Indictment for Maintaining Public Nuisance Held Not Duplicitous.—An indictment for maintaining public nuisance, alleging several different acts which of themselves constituted offenses, held not duplicitous, since it was not single offenses that constituted nuisance, but the combined and continued offenses as set out.

2. Nuisance—Indictment Held to Charge Public Offense.—An indictment for maintaining public nuisance, alleging all of the acts charged were committed in immediate proximity to where large number of persons were at work, and that acts were common nuisance of all good citizens in such neighborhood residing, held to state public offense.

3. Criminal Law—Wrongful Admission of Testimony, if Error, Held Harmless, in View of Overwhelming Evidence of Guilt.—In prosecution for maintaining public nuisance, admission of testimony as to actions of lewd women on their way to defendant's farm, where alleged nuisance was maintained, if error, held harmless, in view of overwhelming evidence of defendant's guilt.

4. Nuisance—Evidence Held to Establish Offense.—In prosecution for maintaining public nuisance, where it was alleged that defendant permitted gamblers, lewd women, bootleggers, and other immoral characters to congregate and ply their trade on his farm, evidence held sufficient to establish the offense charged.

E. W. DRAFFEN and C. C. BAGBY for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Thomas—Affirming.

Under an indictment charging him with the offense the appellant, Warren Curd, was tried and convicted in the Mercer circuit court of creating, suffering and maintaining a public nuisance on his farm, containing about 125 acres, immediately adjacent to the land and property of the Kentucky Hydro-Electric Company, the builder and owner of the structure known as Dix River Dam. The verdict assessed a fine against him of $500.00. His motion for a new trial was overruled, and from the judgment pronounced on the verdict he prosecutes this appeal, urging as grounds for reversal, (1) the insufficiency of the indictment; (2) error in the admission of testimony; (3) insufficiency of the testimony to sustain the conviction. and (4) error in the instructions. Grounds (3) and (4) are bottomed largely upon the same contention as is ground (1), since there is abundant evidence to sustain the charges made by the indictment, and the instructions submitted to the jury defendant's guilt or innocence of those charges. So that, if the indictment is sufficient, there is but little left for consideration under grounds (3) and (4), and we will proceed to determine the points raised by ground (1), as to the sufficiency of the indictment.

1. After naming the offense, and after fixing the venue and the time at the beginning of the accusatory part of the indictment, it charged defendant with "unlawfully and willfully, and habitually and knowingly, suffer and permit persons of bad character, and ill repute, both men and women, to be assembled, and remain and come and go upon his said farm and tract of land, and at and near certain tents and shacks, and cheap houses, and houses and restaurants, engaged in lewd and lascivious conduct and behavior, and to drink intoxicating liquors, and be and become very drunk and disorderly and boisterous, and to curse and swear and use vulgar, profane and obscene language, and to fire and discharge firearms, and engage in gambling and games of chance for stakes and money, and to be drunk and disorderly and noisy, by day and by night, and continually and habitually so conduct themselves and frequently, and as often as twice each month, and at and about the pay day of the said L. E. Myers Company, when men at work upon said dam and business incident thereto were paid their wages, receive and entertain and suffer and permit to come to said

tents and shacks and cheap houses and on to and across said farm, other dissolute persons of evil name and fame and reputation, and whores and prostitutes and lewd women, and strange women, and to there remain and join in and add to the disorders and boisterousness and acts aforesaid, and to ply their trade, and there remain for days and nights, and leave and return and go at will, and frequent and resort to said farm and tents and houses, and join in and increase and engage in the acts and wrongs and disorders aforesaid; and suffer and permit persons in intoxicated condition to be and come upon said property, and acts of violence and crimes and wrongs to be committed thereon, and as the result of the condition hereinbefore charged, and because thereof, all to the common nuisance of all good citizens in said neighborhood residing, and being and passing and having the right to reside, be and pass in said neighborhood and to the scandal and nuisance of said neighborhood,'' etc.

The objections to the indictment, as so framed and as argued by counsel in their brief, is that it is duplicitous and multifarious in that it charges defendant with more than one offense, but we do not find any merit for that contention. The general charge in the indictment is disorderly conduct of persons suffered and permitted to congregate and be upon defendant's premises with his knowledge and consent, and the fact that their conduct constituted various different violations of the law does not subject the indictment to the criticism made, since it is not each single occasion, or each particular character of conduct on the part of those permitted to congregate and be upon defendant's premises that created the nuisance, but rather a continuation of disorder and open and notorious violations of law by them which all in the aggregate constituted the nuisance of which the Commonwealth made complaint. In other words, we mean to say that it is perfectly competent to charge in the indictment for this character of offense, and to prove by the testimony introduced, that various acts of unlawful conduct on the part of others, and which the defendant suffered and permitted to be engaged in, were committed and at as many times within the limitation period as it occurred. Neither can we agree with counsel in their contention that the indictment, if it charges any character of nuisance describes a private instead of a public one, because in its introductory part, and which we did not include in the

above excerpt taken. therefrom, it is said that all of the acts charged were committed in the immediate vicinity where a large number of persons were engaged at work upon the dam, and in the latter part of the excerpt it is expressly stated that such acts so committed were "to the common nuisance of all good citizens in said neighborhood residing, and being, and passing, and having the right to reside, be and pass in said neighborhood, and to the scandal and nuisance of said neighborhood." We conclude, therefore, that there is no foundation for the contention that the commission of a public nuisance was not charged in the indictment, and the court properly overruled the demurrer filed thereto.

2.   The only testimony introduced by the Commonwealth of which complaint was made, or which is referred to in brief, consisted in that given by a number of witnesses to the effect that on pay days of the contractor for building the dam, large numbers of lewd colored women would alight from the train at the junction of the spur running out to the works with the line of railroad running from Cincinnati, Lexington and other points north, and walked from thence over the spur track to defendant's farm and crossed it to the rented shacks and tents, which he had constructed thereon.  It is insisted under this ground  that the conduct of such persons while traveling on the spur track and before reaching defendant's farm, was incompetent, but we do not understand counsel to object to such conduct after the persons guilty of it reached defendant's premises.  If, however, such a contention was made, it could not be sustained, since the very gravamen of the offense charged was the permission by defendant of such conduct on his premises.  As to part of the evidence objected to, we do not find in the record any testimony confining such conduct as being committed exclusively upon the spur track before it reached defendant's premises, which were but a short distance therefrom.  If, however, such testimony had been produced, it is quite probable that it would have been relevant as imparting knowledge to defendant of the character of persons that he subsequently permitted to travel across and to congregate and remain upon his premises, and to perpetrate thereon the acts complained of.  In no event, however, do we feel authorized to reverse the judgment for this alleged error, if one, since at most it did not prejudice defendant's substantial rights in view of the

overwhelming testimony produced by the Common-wealth.

3. As hereinbefore stated, there was abundant testimony by the Commonwealth to sustain the charges in the indictment. It was shown that illicit sales of intoxicating liquors were made by the occupants of the shacks owned and rented by defendant, and that he had knowledge thereof, since on one occasion he was present when the prohibition officer made the discoveries. It was likewise proven that gambling was indulged in, not only in the rented shacks, but upon the outlying vacant spaces, which were in the possession of the defendant and not rented to any one. It was furthermore testified to by a number of witnesses that, especially on pay days, which were twice each month, numbers of women of ill-fame came from Cincinnati, Louisville, Lexington and other places, and remained upon defendant's premises and slept either in the rented shacks or upon the open ground, and they plied their trade in the daytime and in the open where their illicit acts could be seen by anyone passing within view, and were seen by some of the witnesses; that cursing, swearing and much vulgarity were indulged in, not only by those women, but by almost everyone occupying defendant's premises. It is shown that he was frequently in and about the shacks and tents rented by him, and he admits going to them at least once per week to collect his rents. He lived but a short distance therefrom and on the same tract of land, and it was virtually impossible for him not to have known of the conduct as described by the witnesses, not only as to what was going on in his buildings and tents, but also what was carried on in the open and outside of them, and at places exclusively in his possession. It was furthermore proven by the Commonwealth, and not contradicted by any testimony, that automobiles driven by strangers having no connection with the work of constructing the dam, were not permitted on the premises of the hydro-electric company without being searched, and there was proof to show defendant's knowledge of that rule. However, he sold the right to enter upon his premises with automobiles to a person known to be a bootlegger, rum runner and an illicit dealer in intoxicating liquors, and thereby enabled not only the occupants of his premises to obtain intoxicants, but the occupants of the premises of the electric company as well, and the evidence of the character of person to whom he sold such privilege was such as to

justify the inference that his purpose in procuring it was known by defendant.

In the contracts with his tenants, and which he introduced, it was expressly provided that no illicit sales of liquor should be indulged in by the lessees, and also that the lessee "agrees to run an orderly house." It was likewise inserted in the written lease contracts that if any part of their terms were broken the lessees were to give immediate possession to the defendant. Notwithstanding the proof to establish his knowledge of what occurred within the leased premises, he did not avail himself of the latter provision in his contract, but suffered and permitted the same conditions to exist, and, so far as the record discloses, without protest except upon one or two occasions to forbid gambling. Matters progressed to such a point that the contractors engaged in the construction of the dam made complaint, which brought about a conference between defendant and their attorney, Col. E. H. Gaither, who importuned defendant to abate the nuisance, or to rent his premises to his client so that it might do so, but all without avail.

We are fully aware of the rule as to what facts are required to charge a landlord with maintaining a public nuisance committed upon premises leased by him to others, and which are clearly pointed out in the case of Blocker v. Commonwealth, 153 Ky. 304. In that opinion a number of prior cases from this court are referred to, as well as standard text authorities upon the subject. It would serve no useful purpose in this case to specify or restate all the many essential facts required to render the landlord responsible criminally for the acts of his lessee, since one of them, as stated in the Blocker case is, "or consented to the premises being used for such unlawful purpose." Aside from what occurred upon portions of defendant's farm that was not leased to anyone but in his exclusive possession, he certainly consented to a continuation of the use of his rented premises in the illegal manner proven, after he had known of such use, and he did not retake possession of them or forfeit the leases, as his contracts expressly provided that he might do. We, therefore, conclude that the evidence in the case fully established the offense, as defined in the Blocker and other cases.

4. No serious complaint is made in briefs against the instructions given by the court, which is the fourth and last ground urged for reversal of the judgment, and

the complaint as made consists of a reargument of the claim that the proven nuisance was a private instead of a public one, and that instead of submitting the case to. the jury under instructions following the language of the indictment, the court should have sustained defendant's motion for a peremptory acquittal; but our disposition of the other grounds relied on sufficiently answers that. contention.

Finding no meritorious error in the trial, the judgment is affirmed.