## Commonwealth v. Phoenix Amusement Company, Inc.

(Decided November 17, 1931.)

J. W. CAMMACK, Attorney General, GEO. H. MITCHELL, Assistant Attorney General, and GRANT E. LILLY for the Commonwealth.

J. J. GREENLEAF and G. MURRAY SMITH for apepllee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The Phoenix Amusement Company owns its building and therein operates a picture show at Richmond, Madison county, Kentucky. It began to engage in this business in that city in September, 1930. On February 17, 1931, the grand jury returned an indictment against it "for the offense of carrying on work on the Sabbath day, and for maintaining and operating a common nuisance, to-wit; a motion picture show on the Sabbath day." It is charged in the indictment that it was a corporation, created and existing under the laws of the commonwealth of Kentucky, authorized to conduct moving picture shows and other exhibitions in this commonwealth.

In the accusatory part of the indictment two offenses are named: (a) The offense of violating section 1321, Ky. Statutes, commonly known as the "Sunday law; and (b) of "unlawfully suffering and maintaining a common nuisance, by conducting its usual business on the Sabbath day." In the descriptive portion it is

alleged that the company on the 15th day of February, 1931, a Sabbath day, and on each and every Sabbath between October 15, 1930, and the 15th day of February, 1931, inclusive did, unlawfully and willfully, give an exhibition of moving pictures in its building in Richmond, Madison county, Ky.; that it invited and received in its building a large number of persons to see its picture show for which it charged an admission fee, which was the usual and customary business of the company, and that the same was given in the usual and customary manner by its regular employees, the number thereof exceeding three on each Sabbath day; that its show and the work thereof by its employees were defiantly engaged in over the earnest protests of the religious people of the city and county, and over the written orders of the city council; that the company gave out in speech and in writing that it intended to continue its show in its building. It is charged that all of these acts were against the protests of the good citizens and of the city council; that a large number of people attended on the Sabbath to witness its show; that their attendance thereat ''breaks the peace of the community and encourages others to attend, and but for their attendance, the show would not be given''; that a large number of passes had been given to the people to induce them to attend. It is further charged that this was done by it to break down the Sabbath law, to debauch the people, and to break down and to offend the moral and religious feelings of the people of the community, ''all to the common nuisance of the good people residing in the city and county, and to those residing in or near the building and having a right to pass and repass.''

The appellee filed its general demurrer to the indictment on the ground that (a) it did not state facts sufficient to constitute a public offense, (b) and that more than one offense was charged in the indictment.

On a consideration of the demurrer, the trial court indicated he would sustain it because more than one offense was named in the indictment. Thereupon the commonwealth elected to try the offense of ''common nuisance.'' And an order was entered dismissing the indictment, or so much thereof as charged a statutory offense. The appellee thereupon insisted on its demurrer on the ground the facts stated in the indictment were not sufficient in law to constitute the common-

law offense of common nuisance. The court sustained the demurrer on this ground, dismissed the indictment. to which the commonwealth excepted and prayed an appeal, and is here asking for a certification of the law.

Section 126, Criminal Code of Practice, expressly provides that an indictment, except in the offenses mentioned in section 127 thereof, neither of which is set out in the indictment herein, shall charge but one offense. It may charge that it was committed in different modes and by different means, and it may allege the modes and means in the alternative. Anderson v. Com., 144 Ky. 215, 137 S. W. 1063; Brannon v. Com., 215 Ky. 589, 286 S. W. 785.

It is provided by section 162 of the Criminal Code of Practice that a defendant may plead to an indictment the pleas authorized by section 172 thereof, or he may demur to it. On his filing of a demurrer, if the indictment charges more than one offense, the attorney for the commonwealth may dismiss one of them, and thereupon the demurrer should not be sustained on that ground. Section 168, Criminal Code of Practice; Cartwright v. Com., 196 Ky. 6, 244 S. W. 55; Davis v. Com., 201 Ky. 300, 256 S. W. 429; Hudson v. Com., 214 Ky. 578, 283 S. W. 1034.

It is very clear that in the accusatory part of the indictment the appellee was charged with both the "offense of violating the statute, commonly called the 'Sunday law' " and also the offense of "suffering and maintaining a common nuisance, by conducting its usual business on the Sabbath day." Thus it was charged with two offenses, one a statutory, and the other a common-law offense, which was plainly a misjoinder according to the provisions of section 126 supra.

Section 124 of the Criminal Code of Practice requires the indictment be direct and certain as to (a) the party charged; (b) the offense charged; (c) the particular circumstances of the offense charged, if they be necessary to constitute a complete offense. Section 136 provides: The "words used in a statute to define an offense need not be strictly pursued in an indictment, but other words conveying the same meaning may be used." Taylor v. Com., 3 Bush 508; Moore v. Com., 92 Ky. 630, 18 S. W. 833, 13 Ky. Law Rep. 738; Gratz v. Com., 96 Ky. 162, 28 S. W. 1159, 16 Ky. Law Rep. 465; Barnett v. Com., 195 Ky. 699, 243 S. W. 937.

In Deaton v. Com., 220 Ky. 343, 295 S. W. 167, 168, it was held:

"A good statement of the offense in the descriptive part of the indictment will not supply the failure to name the offense in the accusatory part of the indictment, and, vice versa, a correct naming of the offense in the accusatory part of the indictment will not supply a defective statement of the acts constituting the offense in its descriptive part."

In Gregory v. Com., 226 Ky. 617, 11 S. W. (2d) 432, this rule was quoted with approval, and the court further said:

"It is essential that accusatory and descriptive part of indictment cover same offense."

In Com. v. Tobin, 140 Ky. 261, 130 S. W. 1116, it was written that: "An indictment must charge in its accusing part a public offense for which it is intended to present the accused, and in the descriptive part must state the facts which, if established by the proof, constitute the offense charged." This rule was approved in Com. v. Castleman, 8 Ky. Law Rep. 608; Brooks v. Com., 98 Ky. 143, 32 S. W. 403, 17 Ky. Law Rep. 698; Bennett v. Com., 150 Ky. 604, 150 S. W. 806, 43 L. R. A. (N. S.) 419; Elliott v. Com., 194 Ky. 576, 240 S. W. 61; Forman v. Com., 195 Ky. 758, 243 S. W. 1043.

Considering the fact that the indictment distinctly named the two offenses in the accusative part, the one a statutory and the other a common-law offense, in view of the rule stated and the express provisions of sections 122, 124, and 126 of the Cole, supra, it should be conceded that the indictment improperly joined the two offenses which made it, under section 126, supra, subject to demurrer, and that it was the duty of the court to sustain the demurrer on this ground, unless the commonwealth's attorney exercised the privilege authorized by section 168 of the Criminal Code of Practice, by making the election of the offense he desired to prosecute and dismissing the other. His right of election may be exercised before the demurrer is sustained (Davis v. Com., 201 Ky. 300, 256 S. W. 429), or even after it is sustained (Cartwright v. Com., 196 Ky. 6, 244 S. W. 55).

The election by the commonwealth's attorney to prosecute and try the appellee on the charge of the offense of common-law nuisance brings squarely before

us for consideration two questions: (1) Are the facts set out in the descriptive part of the indictment sufficient to constitute the offense of common-law nuisance? and (2) is merely the stating in the descriptive part of the indictment facts constituting only a violation of a statute against carrying on, or engaging in, a business on the Sabbath day, sufficient in law to constitute the offense of common nuisance? Subsection 2 of section 122 of the Criminal Code of Practice requires that every indictment shall contain

"a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case."

The rule stated in Deaton v. Com., supra, and Gregory v. Com., supra, is applicable to, and controls, the descriptive part of the indictment as much, or the same, as it controls the accusatory part as announced by the court in those cases. The naming of the offense in the accusatory part does not dispense with the requirements of subsection 2 of section 122, supra.

The punishment prescribed by section 1321, Ky. Statutes, for engaging in business or work or labor on the Sabbath day, is a fine of not less than $2 nor more than $50 for each offense. Strand Amusement Co. v. Com. (Ky.) 43 S. W. (2d) ——, decided November 10, 1931. No punishment is provided by statute for the commission of the common-law offense of common nuisance. The common-law punishment for a public nuisance was, and is, a fine in any sum, in the discretion of the court or jury, or confinement in the county jail for any time, in the discretion of the court or jury, or both such fine and imprisonment, in the discretion of the court or jury, trying the case, with the duty of, and power in, the court, on the conviction of the defendant, to abate by proper orders the nuisance. Ehrlick v. Com., 112 S. W. 565, 33 Ky. Law Rep. 979. This has not been changed by statute. Sullivan v. Com., 13 Ky. Law Rep. 397.

It is charged in the indictment that the picture show conducted in its building by appellee "breaks and offends the morals and religious feelings and senses of those who attend the shows." Employed counsel for the common-

wealth has favored us with an able brief on the law of the case, and a learned homily on the religious phase of the law. He has supported his argument of the second topic by church resolutions, declarations of the city council, by an extensive statement of the official disregard of the Sabbath law, and an elaborate statement concerning alleged local conditions.

Even if the city council declared that the acts alluded to in the indictment should constitute a common nuisance its so doing would not thereby make such acts constitute the common-law offense of common nuisance, unless the acts themselves, when measured by the common law, constitute in law a common nuisance. In re Jones, 4 Okla. Cr. 74, 109 P. 570, 31 L. R. A. (N. S. 548, 140 Am. St. Rep. 655.

The allegation in the indictment that the engaging in the business of conducting a picture show on the Sabbath day breaks and offends the morals and religious feelings and senses of those who attend it or of the community cannot be regarded as a statement of facts, sufficient in law to constitute common nuisance.

In Strand Amusement Co. v. Com., supra, we stated the genesis of our statute regulating certain amusements, work, and labor on the Sabbath day. A statement here of the genesis of the Sabbath day may not be an impertinence. From the earliest time, the purposes, as well as the proper use, of the Sabbath day, have been a polemical, semireligious, subject. The Sabbath day had its origin with the Israelites at the foot of Sinai. Their reasons for its observance were that: (a) It was a sign between God and his people (Exod. 20:12); (b) it was a remembrance of the delivery of His people (Deut. 15); it should be kept holy in remembrance of His rest from His work (Exod. 20:11); its purpose was to protect those whose time was at the disposal of others (Deut. 14).

With Christians it began at the empty tomb in the garden outside Jerusalem. It commemorates the eclipse of the world of grace over the world of nature. The Resurrection is their warrant for its weekly observance. One principle common to both the Israelites and Christians was the duty to consecrate a portion of the day to the special service of God. A second common principle with both of them was that the Sabbath day was a periodical suspension of human toil, necessary and required for the physical, mental, and moral nature of man.

It should be conceded that the seventh day was set apart a long time before the day of Moses by divine declaration for man as a man, as he was, and not in his future fancied state. Gen. 2:2. The law of six days' work and one day's rest was wrought in the very constitution of the human nature of man, from the beginning. It was carried into and was a part of the very fabrication of the constitution of man, his physical, mental, and moral nature, at the time of creation to enable him to put into, and to get out of, this existence his best elements, as well as to induce and to qualify him to enjoy the delights of God's pure air, sunshine, and flowers; the songs of birds and all of His created beauty, as well as man's own created, chosen, and sinless amusements for his edification, pleasure, and relaxation, free from the fatiguing and exacting cares, labors, and worries incident to the earning of his living by the sweat of his face. This view was manifested by Moses' interpretation of the Eighth Commandment in this manner:

"Six days thou shalt do thy work, and on the seventh day thou shalt rest; thine ox and thine ass may have rest, and the son of thy handmaid and the sojourner may be refreshed, And in all things I have said unto you, be circumspect." Exod. 23:12, 13.

The perseverance and zeal of the Israelites in their observance of the Sabbath day led them to disregard Moses' interpretation. In the course of centuries they heaped up an enormous mass of superstitious rules until the Sabbath day as a day of rest and worship became hurtful to the health, morals, and religions of man. As a specimen of their rules may be listed the one that declared that traveling on the Sabbath day more than 2,000 cubits was work. Another forbidding a woman looking into a mirror on the Sabbath for fear that she might see a gray hair and pull it out, such was work. The plucking of an ear of corn by a hungry man was reaping; rubbing the heads of wheat in the hands to release the grain; to climb a tree; to ride; to swim; to clap one's hands or to strike one's side, was work on the Sabbath interdited by their regulations of the Sabbath. Their ultraviews of the divine purpose of the Sabbath, and the uses to which it should be put, led them to accuse Him and His disciples of violating the Sabbath; to charge Him with a violation of their regulations and traditions controlling the Sabbath; by His healing of another on the Sabbath day. The

scene of the first incident was in the field, the second in the synagogue. In the one, Sabbath observance was set aside by Him at the call of personal needs; in the other at the call of a person's calamity. So the two corres-ponded to the old Puritan principle that the Sabbath law allowed works of necessity and of mercy. This prin-ciple is recognized by a clause of section 1321 of our Statutes, which excepts "the ordinary household offices, or other work of necessity or charity."

There are organizations of serious and thoughtful men, as well as many individuals, who are convinced that the Sabbath day should be abolished, and that all statu-tory enactments regulating the performance of work or labor on that day should be abrogated. Others equally as considerate and earnest insist that such statutory enactments are necessary to protect the sacredness of the day. There are still others no less concerned in the welfare of humanity who believe there is no reason for the recognition of a difference between the sacred and the secular day; that the secular is no less truly sacred than the sacred itself; that the Sabbath day should be occupied and spent according to the dictates of the con-science of each individual; that every one is individually responsible to the Creator for his individual acts and con-duct, while yet others insist that it is solely for worship according to the customs and rituals of the churches.

In such contrariety of theories of the purpose and use of the Sabbath day and the soundness of the reasons therefor, this court is not concerned. It is the province and duty of the court to interpret, observe, and admin-ister man-made law as it has been written, without intro-ducing any religious element, and without regard to the religious theory of others, or even of its own predilec-tions. In so doing, we have as a preceptor Gallio. When he was proconsul of Achaia the Jews made insurrection with one accord against Paul and carried him to the judgment seat, saying:

"This fellow persuadeth man to worship God contrary to the law (not the law of Rome). And when Paul was about to open his mouth, Gallio said unto the Jews, If it were a matter of wrong or wicked lewdness, O, Ye Jews, reason would that I should bear with you; But if it be a question of words and names, and of your law, look ye to it; for I will be no judge of such matters. And he drave

them from the judgment seat." Acts 18:12-16. The same exemplication of wisdom is embodied in the doctrine, "render unto Cæsar the things which be Cæsar's, and unto God the things which be God's." Luke 20:25.

This is the basis and dominant principle underlying the doctrine of the separation of church and state.

The Constitution of the United States declares: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U. S. Const. Amend. 1. Kentucky was the second state after the first original thirteen to be admitted to the Union, but the first to adopt a Constitution which has been a model for all states subsequently admitted.

Beginning in the Constitution of Kentucky, adopted April 19, 1792, and continuing in the second, third, and present Constitutions of Kentucky, it has been the constitutional policy of the state that "no preference shall ever be given by law to any religious sect, society or denomination; nor to any particular creed, mode of worship or system of ecclesiastical policy. . . . No human authority shall, in any case whatever, control or interfere with the rights of conscience." Bill of Rights, sec. 5.

These constitutional provisions guarantee and secure, in so far as it is humanly possible by the organic law, to every citizen the inalienable and God-given right to think and to reason, to speak and to act, on the subjects of God and religion as he may desire, at all times and places, under all circumstances and conditions and to worship God according to the dictates of his own conscience, free, and independent of the dogmas, doctrines, and systems of all others, so long as he does not offend the sense of decency, nor materially affect, interfere with, or interrupt, the rights and enjoyments of others. Upon this theory the enactment of the statute concerning work and labor on the Sabbath was enacted, and upon it, it must be interpreted and enforced by this court. Neither its enactment nor its enforcement may be predicated and sustained upon a religious theory, belief, or sentiment, although it is largely supported and maintained by such. No legislative body has the constitutional authority to enact, and no court has the constitutional power to enforce, a law to control or to interfere with the right of conscience. The law, and its enforcement, may protect religious worship from disturbance or interference (sec-

tion 1267, Ky. Statutes), but it cannot command nor require Sabbath observance as a religious regulation. The same constitutional inhibition which forbids the enactment of such a law prohibits the court from enforcing it. The statute pertaining to and regulating certain amusements, work and labor on the Sabbath, cannot be constitutionally enforced and administered by the court upon the ground that it is a regulation of religion on the Sabbath. The law regards the Sabbath as a chaste reserve for the complex nature of man, as a means to provide a weekly period of rest for the weary, overworked, and tired laborer, and as a plan to protect the weak from the authority and power of the strong to provide a period of rest for those who are subject to the command and control of the avaricious and greedy taskmaster. Our holidays are intended to accomplish a like purpose, but they are not urged or supported by the same or similar religious influences.

In Gray v. Com., 171 Ky. 273, 188 S. W. 354, 356, L. R. A. 1917B, 93, it was written:

"It has been said that the best thought and ablest writers of modern times agree, and human experience has demonstrated, that it is to the best interest of the human family that the members of it have days of rest, and that such days are essential to the moral and physical well-being of society. The Sunday statute was adopted as an assistance to the conservation of the lives and health of all the citizens of the country, to promote their morality and love of family and home. It enables the people who toil daily to be in the society of their wives and children, and to have the benefit of religious worship, upon one day out of seven."

In Capital Theater v. Com., 178 Ky. 780, 199 S. W. 1076, 1078, the court said:

"Notwithstanding its biblical origin and antiquity, the Christian Sabbath has never by reason thereof been required by legislative enactment to be observed as a day exempt from labor; nor does any statute requiring its observance as a day of rest give recognition to that feature. Such statutes are all made to rest on the fundamentally humane doctrine that to the well-being of society periods of rest are indispensably necessary; and that to be pro-

ductive of the contemplated advantage the periods of rest may recur at stated or fixed intervals, so that all the people of which the community is composed may enjoy a respite from labor at the same time.''

Again in Strand Amusement Co. v. Com., supra, we pointed out that the statute regarded the observance of the Sabbath day as a day of rest, and that it was not intended to and did not do so on the theory that the day was a day of worship especially supported and maintained by religious doctrines or sentiments. In that case this language is used:

"Although originating as a religious observance, the statutes are not to be regarded in these days as religious ordinances. They are not designed as punishment for violating a religious tenet, nor to enforce the views of any sect as to the sacredness of a holy day. While the institution is dear to him who reveres it for its divine origin, it has for the statesman and jurist a different signification. Like other prohibitory statutes of more engaging contemporary interest, they are not founded upon the principle of legislating morals, but upon the high regard for the principle of public welfare. Gray v. Com., 171 Ky. 269, 188 S. W. 354, L. R. A. 1917B, 93. Their purpose is to protect society from itself.''

In the cases supra, section 1321, was under consideration. The charge involved in them was not the common-law offense of nuisance. Section 1321 contains a description of the offense therein denounced. According to section 126, Criminal Code of Practice, an indictment thereunder in the language of section 1321, or words conveying the same meaning, will constitute a good indictment for a violation of it, but such an indictment is not sufficient to charge the common-law offense of common nuisance. Even if section 1321 referred to the common-law offense of common nuisance by its popular name, and proceeded to impose a penalty for its commission, an indictment therefor would not be sufficient to charge an accused with its commission in the statutory terms. Mitchell v. Com., 88 Ky. 349, 11 S. W. 209, 10 Ky. Law Rep. 910; Wharton's Criminal Law (7th Ed.) sec. 372. An indictment for a common-law offense must state the common-law elements necessary

to its commission. Mitchell v. Com., supra; Hudspeth v. Com., 195 Ky. 4, 241 S. W. 71; Curd v. Com., 210 Ky. 588, 276 S. W. 498. The allegation in the indictment that it was committed on the Sabbath day does not take the case out of the prevailing rule. If acts and conduct engaged in on a weekday do not amount to a common nuisance, their occurrence on the Sabbath will not constitute the offense. McMillan et al. v. Kuehnle, 78 N. J. Eq. 251, 78 A. 185. One is entitled to have his peace and quietude, his recreation and rest and right to worship as he may choose on the Sabbath, free from the disturbance and interruption of another, and slight evidence of acts and conduct interfering thereith will be more readily accepted as evidence sufficient to sustain a conviction. But the essential elements of a common-law offense must be alleged in an indictment charging its commission, irrespective of the day on which it was committed. The indictment in the present case merely charges in the language or words of section 1321 the offense of common nuisance. It does not charge that the picture show was conducted in an improper, indecent, immoral, noxious, or obscene manner, or not in a decent, orderly, peaceful manner, or that it was exhibiting indecent, immoral, obscene, noncensored pictures, or that it was in proximity of a church building, or church services, or that it was disturbing or interfering with the members of the public in their worship or their various pursuits. Hamlin v. Bender, 92 Misc. Rep. 16, 155 N. Y. S. 963; State v. Barry (Tex. Civ. App.), 217 S. W. 957. In short, it merely charges the act, and a repetition of the act, of conducting a moving picture show on the Sabbath and the inviting and permitting of members of the public to attend its shows on the Sabbath day. There is no statutory or common law forbidding one attending and witnessing a picture show on the Sabbath day, in an orderly, peaceful, quiet manner. Indeed, no such enactment would be constitutionally valid. Subsection 6 of section 1 of the Bill of Rights guarantees to the citizenry "the right to assemble together in a peaceful manner" at a picture show or elsewhere on any of the seven days of the week. The statute, section 1321, supra, only applies to those who operate a picture show or business and engage others thereat. It provides no punishment against those who attend the show. An assembly of persons for the purpose of witnessing and enjoying a picture show on the Sabbath is not an unlawful assem-

bly, nor does the so assembling for, and engaging in, the witnessing of it on the Sabbath, constitute the common-law offense of common nuisance.

In the case of Ehrlick v. Com., 125 Ky. 746, 102 S. W. 289, 290, 31 Ky. Law Rep. 401, 10 L. R. A. (N. S.) 995, 128 Am. St. Rep. 269, we adopted the following definition of nuisance: "A nuisance per se is any act, or omission or use of property or thing, which is of itself hurtful to the health, tranquillity, or morals, or outrages the decency, of the community." This definition was approved in Enright v. Com., 189 Ky. 497, 225 S. W. 240.

The engaging in an act or the using of property or thing which is of itself hurtful to the health, tranquillity, or morals or outrages the decency of the community, is not permissible or excusable under any circumstances, whether there is an express statute applicable thereto or not. A common-law common nuisance, strictly speaking, is such as results from a violation of public rights, and will include intangible injuries from all public exhibitions and natural tendencies which pander to the vicious tendencies and draw the vicious and disreputable members of society. City of Chicago v. Shaynin, 258 Ill. 69, 101 N. E. 224, 45 L. R. A. (N. S.) 23.

Also in determining what constitutes a common nuisance the question of time, location, and surrounding circumstances must be considered. City of Pana v. Central Washed Coal Co., 260 Ill. 111, 102 N. E. 992, 48 L. R. A. (N. S.) 244.

No lawful business or enterprise is ever a nuisance per se, such as one wholly forbidden by law. Emrich v. Marcucilli, 196 Ky. 495, 244 S. W. 865. As examples of the latter may be listed a house of prostitution [King v. Com., 154 Ky. 829, 159 S. W. 593, 48 L. R. A. (N. S.) 253], a pool room where betting is permitted (Enright v. Com., 102 S. W. 799, 31 Ky. Law Rep. 442, 444), a room in which betting on horse races is engaged [Ehrlick v. Com., 125 Ky. 742, 102 S. W. 289, 31 Ky. Law Rep. 401, 10 L. R. A. (N. S.) 995, 128 Am. St. Rep. 269], dancing, accompanied by cursing and drunkenness, or a public bull fight [State v. Conty, 207 Mo. 439, 105 S. W. 1078, 15 L. R. A. (N. S.) 747, 123 Am. St. Rep. 393, 13 Ann. Cas. 787], or any other place where the wicked or vicious elements of society assemble together and engage in evil conduct or indulge in unlawful acts.

A lawful business conducted in a proper manner and at an appropriate place is not a nuisance, unless it causes injury of a substantial character, and impairs the ordinary physical enjoyment of property within its sphere, or tends to offend the quietude, peace, health, or morals of members of the public. L. D. Pearson & Son v. Bonnie, 209 Ky. 307, 272 S. W. 375; Emrich v. Marcucilli, 196 Ky. 495, 244 S. W. 865; Great Northern Refining Co. v. Lutes, 190 Ky. 451, 227 S. W. 795; Louisville & N. R. Co. v. Com., 158 Ky. 774, 166 S. W. 237; City of Richmond v. House, 177 Ky. 814, 198 S. W. 218; Albany Christian Church v. Wilborn, 112 Ky. 507, 66 S. W. 285, 23 Ky. Law Rep. 1820; Morris v. Roberson, 137 Ky. 841, 127 S. W. 481, 136 Am. St. Rep. 323; Hyden v. Terry, 108 S. W. 241, 32 Ky. Law Rep. 1198; Alexander v. Tebeau, 71 S. W. 427, 24 Ky. Law Rep. 1305; Enright v. Com., 189 Ky. 497, 225 S. W. 240; Indian Refining Co. v. Berry, 226 Ky. 123, 10 S. W. (2d) 630; Louisville Coffin Co. v. Warren, 78 Ky. 400; Louisville & N. R. Co. v. Com., 225 Ky. 481, 10 S. W. (2d) 461.

The operation of a picture show is a lawful trade or business. Yet it is under the same obligation to observe and obey the statute regulating amusements, work, and labor on the Sabbath as any and all other lawful businesses or occupations. A license is required for its operation, and the statute fixes the amount thereof. The city may require the owner thereof to obtain a license. It is therefore regarded by the law as a lawful business. In the cases of Stevens v. Morenous, 169 Ill. App. 282; People v. Hemleb, 127 App. Div. 356, 111 N. Y. S. 690; Hamlin v. Bender, 92 Misc. Rep. 16, 155 N. Y. S. 963; Id., 173 App. Div. 996, 159, N. Y. S. 1117; State v. Marry (Tex. Civ. App.), 217 S. W. 957; Indianapolis v. Miller, 168 Ind. 285, 80 N. E. 626, 8 L. R. A. (N. S.) 822; City of Chicago v. Weber, 246 Ill. 304, 92 N. E. 859, 34 L. R. A. (N. S.) 306, 20 Ann Cas. 359; Lyric Theater Co. v. State, 98 Ark. 437, 136 S. W. 174, 33 L. R. A. (N. S.) 325, it as held that the operation of a picture show or theater on the Sabbath was not a nuisance per se.

There is a vast difference between the operation of a picture show and the engaging in a business which is a nuisance per se. The latter class constitutes a nuisance to the community, whether in, near to, or remote from it, whereas a lawful trade or business may or may

not be a nuisance, according to its location and the manner in which it is conducted.

In Bishop's Criminal Law, vol. 1, sec. 1142, it is said:

> "Now, in reason, no useful trade can be a nuisance per se, because every such trade must be carried on somewhere, and it is a nuisance or not, according to the manner in which it is conducted and its proximity to habitation and public ways." Commonwealth v. T. J. Megibben Co., 101 Ky. 195, 40 S. W. 694, 19 Ky. Law Rep. 291; Ashbrook v. Commonwealth, 1 Bush (64 Ky.) 139, 89 Am. Dec. 616.

The indictment herein adequately and properly alleges facts sufficient to constitute the offense denounced by section 1321, supra, but it does not state facts sufficient to constitute the common-law offense of common nuisance.

The Legislature may declare that the act or a repetition of the act denounced by section 1321 shall constitute a common nuisance, Schneider v. Commonwealth, 232 Ky. 199, 22 S. W. (2d) 587. It has not done so, and we are not authorized to do that which it may do, but has not done. We cannot construe its enactment beyond its own expression and intendment.

The commonwealth was properly required to elect whether it would prosecute the charge of a violation of the statutes or the common-law offense. It chose its own charge, and selected the offense not sufficiently alleged in the indictment, and it is therefore bound thereby. The statutory offense of violation of the "Sabbath law" may be proceeded against by a penal action (Capital Theater Co. v. Commonwealth, supra); or by an indictment (Strand Amusement Co. v. Com., supra). It should be conceded that thus the law furnishes an adequate remedy to prevent the violation of the "Sunday Law" without substituting therefor the common law against nuisance, when the facts charged do not constitute the common-law offense.

The indictment failing to charge more than an act or acts violating the statute, we are not authorized to hold that it sufficiently states facts constituting the offense of common nuisance, authorizing the infliction of the penalty therefor as fixed by the common law.

For these reasons, the judgment is affirmed.