Henry HOPKINS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 8, 1957.

John O. Hardin, Hopkinsville, for appellant.

Jo M. Ferguson, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

SIMS, Judge.

Henry Hopkins was convicted of the misdemeanor of engaging in prostitution, an offense denounced by KRS 436.075. His punishment was fixed at a fine of $100 and 6 months in jail and he has filed motion for an appeal. In seeking to reverse the judgment appellant argues the court erred: 1. In overruling his demurrer to the warrant; 2. in overruling his motion for a directed verdict; 3. in instructing the jury; 4. in admitting incompetent evidence prejudicial to him; 5. in permitting the attorney representing the Commonwealth to make an improper argument.

█ We find no merit in appellant's first ground for reversal. He was tried in the Hopkinsville Police Court on a warrant charging him with the offense of "operating a house of ill-fame." He was convicted and appealed to the circuit court where his general demurrer to the warrant was overruled. It is an offense under KRS 436.075 for one to engage in or to aid and abet prostitution "or to receive any person for the purpose of * * * assignation or prostitution in any * * * building." Manifestly, operating a house of ill-fame is just another way of saying that appellant received persons in his hotel for the purpose of assignation or prostitution.

To determine whether the court erred in not sustaining appellant's motion for a directed verdict and erred in instructing the jury, it becomes necessary to give a résumé of the evidence.

On the night of April 30, 1956, two Negro soldiers, Clarence Pound and Clarence Keaton, visited Hopkinsville from nearby Camp Campbell, wearing civilian clothes. They picked up two Negro women, Charlene Squire and Alice Sivells, and about 9:00 P. M., took them to a Negro hotel in Hopkinsville, owned and operated by appellant, for the purpose of spending the night together. Both of the men were drinking. Pound was with Charlene and they registered as "Mr. and Mrs. Pound." Keaton and

Alice registered under an assumed married name. Pound testified that Mary Allen, the Negro woman who was night clerk at the hotel, asked if the woman with him was his wife, to which he replied, "No." Thereupon Mary, said, "You'll have to sign as man and wife."

It might be well to recite here that each man paid Mary $3 for a room. Pound paid Charlene $5 when he arrived in the room, put the rest of his money in his sock, but went to sleep without accomplishing his purpose. When he awakened around 3:30 A. M., his sock was off, his money was gone and so was Charlene.

Appellant is a Negro man 67 years of age, who owns a restaurant operated for Negroes and connected therewith is a small, 5-room hotel which he runs for Negroes. Above the door of the hotel appears a sign, "Rooms for all night." He has owned the restaurant since 1938, and the hotel since 1940, and testified there has never been any complaint against him as to the manner he has operated these businesses. Appellant owns a farm to which he devotes most of his time and Connie Mack runs the restaurant and hotel for him during the day. At night another employee, Mary Allen, a Negro woman, 66 years of age, operates them. His instructions to Mary were to let no couples have a room if they were not married and he never knew of Mary violating his instructions during the 8 or 10 years she worked for him. He was asleep in the hotel on the night in question and knew nothing about the transaction until Pound reported the robbery.

Mary was ill with diabetes and high blood pressure and could not appear at the trial. To prevent a continuance the court permitted an affidavit of appellant to be read as Mary's deposition to the effect that she asked each of these couples if they were married, they answered they were and signed the register as "Mr. and Mrs." She did not know any of the four and believed in good faith they were husbands and wives, otherwise she would not have

rented them rooms, because her instructions from appellant were not to rent rooms to any couple who were unmarried.

The testimony of Alice corroborates that of appellant and Mary. Alice admitted however she had been in the hotel "three or four times" in 1956 prior to this occurrence on April 30th of that year, and she was with a different man on each occasion, who signed the register "husband and wife." On two of these occasions she spent the night in the hotel and on the other two, she departed during the night.

■ The general rule is that a principal is not liable for criminal acts of his agent committed without his knowledge. But where the principal gives complete control of the business to his agent, he is liable for the criminal acts of his agent if the latter is acting within the scope of his employment in committing such criminal acts, or if the principal has knowledge of the agent's criminal acts. 2 Am.Jur. "Agency" § 383, p. 301; DeZarn v. Commonwealth, 195 Ky. 686, 243 S.W. 921; Prater v. Commonwealth, 4 Ky.Law Rep. 344; Cartwright v. Commonwealth, 196 Ky. 6, 244 S.W. 55.

It is not disputed Mary was in charge of appellant's business as night clerk, nor is it disputed she was acting within the scope of her authority in renting these rooms for legal purposes. But the question for determination in the trial court was whether Mary was acting within the scope of her employment in renting rooms for the purpose of prostitution; or if not, did appellant know she was renting his rooms for such purpose.

■ The evidence is in direct conflict as to whether Mary knew these couples were unmarried. Pound testified. he told Mary he and Charlene were not married and then Mary told him they would have to register as "man and wife." This Mary denied and said Pound told her he and Charlene were husband and wife. Then the fact that Alice previously had registered in the hotel with different men on four different occasions within a few months before this occurrence, was certainly sufficient to have brought home to Mary that Alice was engaged in prostitution, provided Mary recognized Alice. Also, such conduct on Alice's part, if appellant had knowledge of it, was sufficient to put him on notice that his hotel was being used for prostitution. It is manifest appellant was not entitled to a direct verdict.

The court should have submitted to the jury the question of whether or not Mary knew either couple was unmarried and was obtaining the rooms for the purpose of prostitution, and whether appellant had knowledge or reason to believe his rooms were being rented for such purpose. The court's instruction did not clearly submit this question to the jury but told the jury they might convict appellant if he "either himself or by his agent" rented a room for the purpose of prostitution "when he knew or had good reason to know that it was to be used for that purpose." Appellant was not present when the rooms were rented by Mary and it was prejudicial error to submit to the jury the question of whether he rented the rooms and not to require the jury to believe that Mary knew, or had reasonable grounds to believe, at the time she rented the rooms that either couple was unmarried, and that appellant knew, or had reasonable grounds to believe, Mary was renting his rooms for prostitution.

■ On another trial the court will give an instruction telling the jury that Mary was the agent of appellant in full charge of renting rooms in his hotel at night and if they believe from the evidence beyond a reasonable doubt that Mary was acting within the scope of her authority in renting rooms to couples she knew, or had reasonable grounds to believe were unmarried; or if the jury believe from the evidence beyond a reasonable doubt that appellant knew, or had reasonable grounds to believe Mary was renting rooms for the

purpose of prostitution, even though the jury may believe appellant had instructed Mary not to rent rooms to unmarried couples, then appellant is criminally liable for Mary's acts in so doing, and the jury should find him guilty.

■ It was not incompetent for the prosecuting attorney to ask appellant "if he did not smell a rat" when couples left his hotel in the middle of the night. To say the least, such conduct is not frequently followed by guests and it should have aroused the proprietor's suspicion. But it was not competent for the prosecuting attorney to ask appellant about an instance in which "some other soldier got rolled in your place" and if the prosecutor had not warned appellant a year previously that he was going to get in trouble if he did not clean up his hotel. When appellant replied he did not remember the conversation, the court allowed the prosecuting attorney to take the stand and relate an instance when a girl had stolen some money from a soldier in appellant's hotel, and to testify he had given appel-

lant such a warning. True, the court admonished the jury the prosecuting attorney's testimony was to be considered only for the purpose of contradicting appellant, but this did not remove the poison from the incompetent testimony. The prosecuting attorney could have proved the general reputation of appellant's hotel but he could not introduce evidence of other specific acts relating to other crimes committed by appellant. The testimony complained of was not only incompetent but highly prejudicial to appellant and constitutes reversible error.

■ The argument complained of was that the prosecutor referred to appellant's hotel as being, in his opinion, a "festering sore and a cancerous sore in the heart of Hopkinsville." This was a conclusion the prosecutor could logically draw from the evidence and did not constitute improper argument.

The motion for an appeal is sustained, and for the reasons given the judgment is reversed for proceedings consistent with this opinion.